JEWEL TEA COMPANY et al., Appellants, v. CITY OF CARTHAGE et al.

In Banc, April 2, 1914.

1. **MERCANTILE AGENT: Interstate Shipment: Paid for Within This State: Invalid Ordinance.** The agent of a Chicago firm went about from place to place in defendant city in Missouri and took orders, for delivery two weeks thereafter, for teas, coffees, extracts and other merchandise. These orders were mailed by said agent to said company at Chicago, where each item so ordered was separately wrapped and the packages placed in a large box addressed to the company at defendant city. On the arrival of the box, the agent opened it and delivered the separate packages (which did not have a purchaser's name thereon) unopened to the person who had ordered them, and received the money therefor. *Held*, that the transaction was interstate commerce, and an ordinance making unlawful a sale by a mercantile agent or sales agent without a license, is, as to such transaction, invalid. The contract for the purchase became binding when the order for the goods was received and accepted at Chicago, and that made it the beginning of an interstate shipment.

2. ———: ———: **Injunction: Multiplicity of Suits.** A citizen of another State is entitled to prosecute a lawful business within this State without the vexatious annoyance and irreparable damage of a multiplicity of suits growing out of the arrest of his sales agent for a violation of an invalid ordinance prohibiting him from carrying on such business without a license, and such an ordinance not being a criminal statute, such citizen is entitled to injunction to restrain the city from frequent prosecution of his agent and interfering with his business.

Appeal from Jasper Circuit Court—*Hon. David E. Blair,* Judge.

REVERSED AND REMANDED (with directions).

*J. D. Harris* for appellants.

(1) A sale, in this State, of goods which are in another State at the time of the sale, is interstate commerce, and no license is or can be required for making such sale. State v. Looney, 214 Mo. 216; Dozier v. Alabama, 218 U. S. 124; Text Book Co. v. Gillispie, 229 Mo. 397; Caldwell v. North Carolina, 187 U. S. 622; Rearick v. Pennsylvania, 203 U. S. 507; Brennan v. Titusville, 153 U. S. 289; Robbins v. Taxing District, 120 U. S. 489; In re Spain, 47 Fed. 208; In re Nichols, 48 Fed. 164; In re Kimmel, 41 Fed. 775; In re Tyerman, 48 Fed. 167. The sales of merchandise made by the Jewel Tea Company from its stores in Chicago, Illinois, to the citizens of Carthage, Missouri, through the instrumentality of its co-plaintiff Martin, and its other agents, is, under the facts disclosed by the record, interstate commerce, and as to such company and its agents the ordinance in question is, in its operation and effect, an unlawful regulation of and interference with interstate commerce, in violation of section 8, article 1, of the Constitution of the United States. Tea Co. v. Lee's Summit, 189 Fed. 280; Tea Co. v. Lee's Summit, 198 Fed. 532; Rogers v. Foundry Co., 167 Mo. App. 228. (2) Neither does the fact that the articles sold were not shipped separately and directly to each individual purchaser, but were packed together in a large shipping box, addressed to the Jewel Tea Company at Carthage, Missouri, and there received by its agent, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. Caldwell v. North Carolina, 187 U. S. 632; Tea Co. v. Lee's Summit, 189 Fed. 280; Tea Co. v.

Lee's Summit, 198 Fed. 532.   Nor does the fact that
the several packages were not labeled in the name of
the respective customers ordering them, take the trans-
action out of the protection of the interstate commerce
clause of the Federal Constitution.   Tea Co. v. Lee's
Summit, 198 Fed. 538; Rearick v. Pennsylvania, 203
U. S. 203.

*Perkins & Blair* and *George W. Crowder* for re-
spondents.


## STATEMENT.

This suit was begun in 1909 to restrain the city
of Carthage and its officers and agents from enforcing
against the plaintiff and its sales agent the provisions
of an ordinance defining a mercantile agent, and tax-
ing that occupation a license fee of one dollar per day
or five dollars per month or twenty dollars per year,
and making the doing of such business without pro-
curing such license a misdemeanor punishable by a
fine of from one dollar to one hundred dollars for
each offense.

The sales agent of plaintiff, one Martin, was twice
arrested and fined for violating said ordinance.   He
appealed to the circuit court, and thereupon his em-
ployer, the Jewel Tea Company, joined him in bring-
ing this suit to restrain the enforcement of said ordi-
nance on the ground that it interfered with the inter-
state commerce business which the Jewel Tea Com-
pany was conducting from its home office in Chicago
with the people in the defendant city.

A temporary injunction was issued, defendant an-
swered admitting the ordinance and its enforcement,
denied that plaintiff Jewel Tea Company was protected
by the commerce clause of the Federal Constitution
as to its business in this State.   After the joinder of

issue the case was submitted to the judge of the circuit court on the following agreed statement of facts.

"AGREED STATEMENT OF FACTS.

"It is hereby stipulated and agreed by and between the parties to the above entitled cause, by their respective attorneys, that said cause be tried upon the admissions in the pleadings and the following facts:

"That on August 2nd, 3rd and 4th, 1909, M. Martin, as agent of the Jewel Tea Company, an Illinois corporation located at Chicago, Illinois, went about from place to place within the city of Carthage, Missouri, and took orders for delivery two weeks thereafter, for teas, coffees, extracts, spices and other merchandise. That said Martin mailed said orders to said company at Chicago, where each item was separately wrapped and packed together with the other items in a large, wooden shipping box, which was nailed up, addressed and shipped to 'The Jewel Tea Company, Carthage, Missouri.' Two weeks after said orders were taken in Carthage, said Martin, who lives in the State of Kansas, and is a resident of said State, returned to Carthage, received the box as agent of said Jewel Tea Company, opened the same, took therefrom the numerous small packages, made up each order therefrom without opening or breaking said small packages, and delivered said orders to the customers having previously ordered same and received the money therefor. None of the items packed inside the shipping box bore the name of any customer or any mark, number or other designation as to what customer should receive it. Where, for instance, Mrs. 'A' and Mrs. 'B', different customers, had each ordered one pound of a certain kind of coffee, or two bottles of a certain size filled with a vanilla extract of a certain brand, there were two one-pound packages of that coffee, either of which said Martin would use, without

breaking, to fill either order; or if there were two bottles of vanilla of the same kind, either of which bottles might go to fill the order of Mr. 'A' or of Mrs. 'B'.

"That on the 16th, 17th and 18th of each month, said Martin, while delivering said merchandise at said city of Carthage, and within the corporate limits thereof, would and did take orders for other goods, wares and merchandise, to be delivered in the same way two weeks later, which illustrates the method employed.

"That neither the Jewel Tea Company nor said Martin nor any other agent of said company had or has taken out a license under the ordinance set forth in plaintiff's petition.

"That the Jewel Tea Company, plaintiff herein, maintains branch offices and retail stores in other towns in Missouri, but none in said city of Carthage; that said company ships no goods to Carthage from Missouri points to fill said orders.

"It is understood that defendants deny that plaintiffs were engaged in interstate commerce or that they are in anywise protected by the Interstate Commerce Act.

"That save for the restraining order issued herein said defendants would have made other arrests of said Martin and others doing business in the same manner for said Tea Company; that such arrests would have been made every time orders were taken in the manner hereinabove set forth."

Upon a consideration of the foregoing facts the trial court dissolved the temporary injunction and dismissed the petition, from which judgment plaintiff appealed.

## OPINION.

## I.

BOND, J. (After stating the above facts.) — We have not been favored with any brief or argument on behalf of respondent which has submitted its case for decision after the statement and brief of appellants was filed, without making any reply thereto. The only question which can arise on this appeal is whether the judgment below is the proper legal conclusion from the "agreed statement of facts." [South Missouri Land Co. v. Combs, 53 Mo. App. l. c. 299; Hinkle v. Kerr, 148 Mo. 43.]

*Interstate Commerce Transaction.*

We think not. We see no escape from the force of the facts, evidencing that the business carried on by the plaintiff, in the manner detailed in the stipulation, was interstate commerce and as such protected from the tax or license fee sought to be enforced against its salesman under the provisions of the ordinance quoted in the petition. [Robbins v. Shelby County Taxing District, 120 U. S. 489; Caldwell v. North Carolina, 187 U. S. 622; Rearick v. Pennsylvania, 203 U. S. 507; Dozier v. Alabama, 218 U. S. 124; Crenshaw v. Arkansas, 227 U. S. 389; Breman v. Titusville, 153 U. S. 289; Welton v. Missouri, 91 U. S. 275; Jewel Tea Co. v. Lee's Summit, 198 Fed. 532.]

The ruling of this court, in Banc, that transactions of the kind under review could only be protected under the commerce clause of the Constitution of the United States when the property sold was without the limits of this State at the time of the sale (State v. Looney. 214 Mo. 216) has not been approved when the construction of that clause was held in judgment in recent cases by the Supreme Court of the United States. That tribunal in considering the same picture and frame business which was analyzed by this court (State v.

Looney, supra), reached a broader conclusion than this court and held that even though the transaction as to the sale of the frames was not a complete sale before they arrived in the State of Alabama, yet as they were a part of the contemplated shipment of the pictures which had been ordered by a customer in Alabama from a dealer in Illinois, they were not a separable transaction and were equally, with the pictures, protected from taxation or license fee by the provision of the Constitution touching interstate commerce, saying on that subject, to-wit:

"No doubt it is true that the customer was not bound to take the frame unless he saw fit and that the sale of it took place wholly within the State of Alabama, if a sale was made. But as was hinted in Rearick v. Pennsylvania, 203 U. S. 507, 512, what is commerce among the States is a question depending upon broader considerations than the existence of a technically binding contract, or the time and place where the title passed." [Dozier v. Alabama, 218 U. S. 1. c. 127-8.]

Applying this full and complete statement of the construction of the power and duty vested in Congress "to regulate commerce with foreign nations, and among the several States, and with the Indian Tribes" (Constitution of the United States, art. one, section 8, p. 3), we are unable to discover any essential difference as to the application of the constitutional provision between the facts set forth in the case now under review and those which were considered by the Supreme Court of the United States when the rule above was stated and applied.

In the present case the agreed statement shows that the sales agent of the plaintiff took orders in Carthage for teas, coffees, extracts, spices and other merchandise then kept at plaintiff's place of business in Chicago, Illinois; that upon the sending in of said orders each of them was filled by separately wrapping

and packing the particular article desired by the customer; that a number of these orders were placed in a shipping box addressed to the plaintiff, at Carthage, Missouri, and were received by its agent there, who opened the large box, took out the particular packages and delivered an unopened package to the respective customer of the kind and quantity of the particular article ordered by him, thus consummating the transaction. While it is true that none of the separately packed articles were superscribed with the name of the respective purchaser, yet each purchaser got only what he had bought and in the same unbroken package in which it was enclosed at the point of shipment, Chicago, Illinois. And though it must be conceded that the title of each purchaser accrued only upon the delivery to him at Carthage, Missouri, and therefore in a technical sense each sale was completed within the State of Missouri, yet the contract for the purchase became binding when the order for the goods was received and accepted at Chicago, Illinois, and that made it the beginning of an interstate dealing. This is precisely the point upon which the ruling of the Supreme Court of the United States was predicated, in the case of Dozier v. Alabama, supra, as to the frames which accompanied the pictures. In that case the pictures had been contracted for but not the frames; as to the latter the purchaser had the option to take or refuse as he saw proper. If he accepted them his title was acquired in Alabama, but under the explicit ruling of the Supreme Court that fact did not exempt the purchaser of the frames, from the same protection which was given to the pictures, which had been specifically ordered, under the commerce clause of the Constitution of the United States.

Our conclusion is that the transactions detailed in the agreed statement of facts in this case were interstate commerce and that the ordinance of defend-

ant was inoperative as to the sales agent of plaintiff who conducted its business in Carthage, Missouri.

II.   Neither is there any doubt in our minds that the agreed statement of facts is the subject-matter of equitable relief.   Municipal ordinances, like the present, though penal, are not criminal statutes.   [Coal Company v. City of St. Louis, 130 Mo. 1. c. 330, and cases cited.]

*Injunction.*

It is apparent from the agreed statement of facts that plaintiff could not have adequate remedy at law. It was entitled to prosecute the lawful business in which it was engaged without the vexation, annoyance and irreparable damage of a multiplicity of suits growing out of an arrest and prosecution of its sales agent for each order and delivery of goods taken and made by him; and defendant admits, in the agreed statement, it intended to institute prosecutions in every such instance except for the temporary injunction granted. The jurisdiction of equity to enjoin interference with interstate commerce by such proceedings under a municipal ordinance similar to the present, is well established.   [Dobbins v. Los Angeles, 195 U. S. 223; Coal Company v. City of St. Louis, 130 Mo. 323; Jewel Tea Company v. Lee's Summit, Missouri, 198 Fed. 1. c. 535.]

In the case last cited the jurisdiction of equity was upheld in a case where the present plaintiff was complainant, and the enforcement of a similar ordinance was enjoined by restraining any prosecutions thereunder which were begun after the filing of the bill in the Federal court.

The judgment in this case is reversed and the case remanded with directions to proceed in conformity with this opinion.

All concur.