MOISE, Justice.
 

 Jack H. Breard, a resident of Dallas, Texas, and the regional representative of Keystone Readers Service, Inc., which engages in the house-to-house solicitation of magazine subscriptions on a nation-wide scale, has appealed his conviction (and the sentence of $25.00 fine or 30 days in the city jail of Alexandria, imposed thereunder), which arose out of his admitted violation of Ordinance No. 500 of the City of Alexandria, entitled
 

 “An ordinance regulating solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise in the city of Alexandria, Louisiana: declaring it to be a nuisance for those engaging in such pursuits to go in or upon private residences without having been requested or invited to do so: providing penalties for the vio
 
 *829
 
 lation hereof; repealing all ordinances in conflict herewith.”
 

 Appellant contends that, said ordinance is unconstitutional in the following respects:
 

 (1) It arbitrarily, unreasonably and unduly burdens, and in effect, curtails, and in effect, denies the fundamental right of such persons to engage in a lawful private business or occupation, thus violating the Due Process Clauses of the Constitution of Louisiana (Art. I, Section 2) and of the Fourteenth Amendment to the Constitution of the United States.
 

 (2) As applied to appellant and other solicitors similarly situated, it imposes an undue and discriminatory burden upon interstate commerce, and, in effect, is tantamount to a prohibition of such commerce, in violation of Section 8, Art. I, Clause 3 of the Constitution of the United States.
 

 (3) As applied to appellant and other solicitors similarly situated, it violates Art. 1, Section 3 of the Constitution of the State of Louisiana and Amendment I and Amendment XIV, Section 1 of the Constitution of the United States, in that it abridges the freedom of speech or of the press because it places an arbitrary, unreasonable and undue burden upon a well established method of distribution and circulation of lawful magazines and periodicals, and, in effect, is tantamount to a prohibition of the utilization of such method.
 

 The identical ordinance was before this Court in the case of City of Alexandria v. Jones, 216 La. 923, 45 So.2d 79. There-the defendant was engaged in soliciting orders for photographs, while here the defendant is engaged in soliciting orders for magazine subscriptions. We affirmed the-judgment and conviction in the Jones case, and we see no reason to do otherwise in the-present case, for the reasons hereinafter-set forth.
 

 This same appellant, Breard, attacked' (unsuccessfully) the constitutionality of a. similar ordinance of the City of Alexandria in the case of Breard v. City of Alexandria, D.C.W.D.La.1947, 69 F.Supp. 722.. The earlier ordinance merely prohibited uninvited solicitation and declared it to be unlawful; the present ordinance declares it to be a nuisance and punishable as a misdemeanor. For all practical purposes, however, the two ordinances are identical.
 

 A similar ordinance of the City of Shreveport was held constitutional and valid by this Court in City of Shreveport v. Cunningham, 1938, 190 La. 481, 182 So. 649.
 

 We are therefore irresistibly drawn to the-conclusion that the present suit is but another phase of the campaign being waged, so grimly to have these “Green River” ordinances invalidated and declared repugnant to the United States Constitution. Since-appellant’s field embraces solicitation of orders for printed matters (magazines) which are actually distributed by the United' States mail, he has raised the additional question of the freedom of the press. But the real issue remains the same — the
 
 power
 
 
 *831
 
 of the local governing authority
 
 to regulate
 
 the conduct of businesses of a local nature, in the interest of the public good under the general delegation of police power from the State; the
 
 reasonableness
 
 of the regulation; and whether it is capable of
 
 impartial administration
 
 without regard to the discretion or judgment of the administering official, board.
 

 The ordinance in question reads as follows :
 

 “Penal Ordinance No. 500
 

 “An ordinance regulating solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise in the city of Alexandria, Louisiana; declaring it to be a nuisance for those engaging in such pursuits to go in or upon private residences without having been requested or invited to do so; providing penalties for the violation hereof; repealing all ordinances in conflict herewith.
 

 “Section 1. Be it ordained by the council of the city of Alexandria, Louisiana, in legal session convened that the practice of going in and upon private residences in the City of Alexandria, Louisiana by solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences for the purpose of soliciting orders for the sale of goods, wares and merchandise and/or disposing of and/or peddling or hawking the same is declared to be a nuisance and punishable as such nuisance as a misdemeanor.
 

 “Section 2. Be it further ordained, etc., that any person violating the provisions of this ordinance shall upon conviction thereof be fined not more than $100.00 or imprisoned not more than 30 days or both fined and imprisoned in the discretion of the Court.
 

 “Section 3. Be it further ordained, etc., that the provisions of this ordinance shall not apply to the sale, or soliciting of orders for the sale, of milk, dairy products, vegetables, poultry, eggs and other farm and garden produce so far as the sale of the commodities named herein is now authorized by law.
 

 “Section. 4. Be it further ordained, etc., that it being deemed by the Council of the City of Alexandria, Louisiana, that an emergency exists, this ordinance shall go into effect immediately upon its passage.
 

 “Section 5. Be it further ordained etc., that all ordinances or parts of ordinances in conflict herewith are hereby repealed.”
 

 That the state and its subdivisions have such authority within certain constitutional limitations is a well-settled principle of constitutional law and needs no further comment. “In the exercise of its police power and in the interest and for the protection, of the public, a state may, without denial of the equal protection of the laws, reasonably regulate a business affected with a public interest, or a useful
 
 *833
 
 trade, occupation, or profession which may prove injurious to the public. * * * Furthermore, within proper limitations, the legislature may, without denial of equal protection of the laws, classify businesses and occupations for purposes of regulation, provide different rules for different classes, limit a regulation to a particular kind of business, extend to some persons privileges denied to others, or impose restrictions on some but not on others, where the classification or discrimination is based on real differences in the subject matter and is reasonable, and the legislation affects alike all persons pursuing the same business under the same conditions. * * Any classification or discrimination must not be arbitrary or unreasonable; and the legislation must not be discriminatory in the sense of applying unequally to persons pursuing or engaged in the same calling, profession, or business under the same or like conditions and circumstances. The object of legislation regulating a business must be the public good and not benefit to individuals or classes; and a statute allowing one class of persons to engage in what is presumptively a legitimate business, while denying such right to others, is unconstitutional unless it is based on some principle which may reasonably promote the public health, safety, or welfare.” 16 Corpus Juris Secundum, Constitutional Law, § 510, pp. 1012ff.
 

 Ordinance No. 500 of the City of Alexandria is by its nature a protective measure, conceived and designed to give the occupants of the home (particularly the housewife herself) and their property additional security against the depredations of the lawless, who often under the guise of soliciting or peddling gain entrance for the purpose of (a) planning a future crime or (b) perpetrating a crime immediately. We are most willing to admit that the solicitors for Keystone Readers Service, Inc., of whom Breard is one, are of the highest character. That does not alter the fact that there are many types of solicitors who are not as carefully selected, nor as reliable, and whose merchandise does not bear the same stamp of general approval as that furnished by Breard’s employer. The protecting purpose of the ordinance is proven by the fact that it is not directed against all soliciting, etc., but only against soliciting in
 
 residences without invitation.
 
 Solicitors, peddlers, hawkers, itinerant merchants and transient vendors can still ply their trade in the commercial districts without restriction.
 

 The ordinance provides for a blanket prohibition of solicitation without invitation, save for food vendors, who are specifically exempt. There is no opportunity for any public official either to grant or to arbitrarily withhold permission to solicit, nor any opportunity for the abuse of administrative discretion. The ordinance (a) defines the offense, (b) provides for punishment therefor, (c) exempts from its scope purveyors of food as a special category of
 
 *835
 
 vendors, (d) provides for immediate passage, and (e) provides for repeal of conflicting ordinances. Certainly it is impersonal in its operation as to all alike. It makes no distinction between resident solicitors and non-resident solicitors. It is purely a regulation, a limited regulation, by a municipality performing an ordinary function of government, the protection of the home.
 

 Proceeding from what we consider to be the real issue of the case to the special contentions made by the defendant — the violation of the Due Process provisions of the State and Federal constitutions, the interference with interstate commerce, and the denial of the freedom of the press, we shall limit discussion to the last two only, the first being embraced within the conclusion reached as to the reasonableness and impartial administration of the statute.
 

 The ordinance imposes no tax, no license. It is a prohibition of an activity on local territory, involving the
 
 problematical
 
 sale of a commodity originating in another state, which is actually distributed through the United States Mails. It imposes no burden on the distribution itself, nor on the manufacture of the commodity, nor on any phase of the transportation from one place to another of that commodity.
 

 We fail to see how this ordinance constitutes a denial of the freedom of the press. It imposes no previous censorship on publication of these magazines for which orders are solicited, nor does it interfere with their distribution, since the method of distributing magazines is either direct to-the patrons via the mails, or through newsstands. No one has made the claim that Breard or his co-solicitors actually sell the magazines copy by copy from door to door. That indeed would be a reductio ad absurdum.
 

 A salient feature of this case, which seems to have escaped previous attention, is'that, transcendent over the rights which appellant claims are infringed by this ordinance, is a fundamental principle of the law — a man’s home is his castle. No one has any vested prerogative to invade another’s privacy. Each community knows its own problems best; and if local governments, being as they are closest to the popular will, -choose to exercise the sovereign’s right to protect a particular class of comparatively defenceless citizens — • housewives, we will not intervene to destroy that protection.
 

 The litigation here relates to the power of the municipality to enact the ordinance and the legality of the enactment. The appellant has contended that the enactment is illegal because it offends the commerce clause and the freedom of the press. On the question of construction we should likewise take into consideration other amendments of the Constitution of the United States so as not to enlarge the grant of power contended for by the opponents and not to diminish the right of enactment for protection as contended for by the munici
 
 *837
 
 •pality. The Fifth Amendment of the Constitution of the United States is to protect •the man against the nation; the Fourteenth Amendment to shield him in the security of the home in his person and property rights .against the tyranny of the state; the Tenth .Amendment to prevent the Congress and the Executive Department from exercising any power not delegated by the' Constitution, and all powers not so specifica% delegated are to be exercised by the State or the people. Its purposes were to let the government have only the necessary powers, the State all those powers not expressly reserved by enumeration in the Federal Constitution. The Constitution of the United States and these amendments set forth specific bounds to the activities of Congress, •necessary safeguards to the sovereignty of the States, puts defenses around the man .and the security of his person and property from unlawful search and seizure amplified by Amendment Four of the Constitution; and in addition to these it also establishes a judicial department to see that these limitations be not transgressed. “The Courts were designed,” wrote Hamilton, “to be an intermediate body between the people and the legislature and the Executive Department in order among other things to keep these departments within the limits assigned to their authority.” These Amendments, and particularly Amendment Ten of the Constitution of the United States, should not be “shorn of all their vitality.”
 

 So rapidly do the rights and powers of business grow by what it feeds on that the State is being rapidly pushed out of the Union as a self-governing entity, and what is unbelievable — even to those who see it— is that the unbalancing of constitutional relations, this betrayal of the necessary and just sovereignty of the State, has been conceived, promoted without a closed season by members of the Congress elected by the people. Any appearance here of criticism as distinguished from earnest conviction would be an error of the mind and not of the heart. The right of the sovereign to safeguard the safety of the home and to better insure a domestic tranquillity throughout the nation is a purpose set out in the preamble of the Constitution of the United States. It is true that the preamble is not one of the provisions of the Federal Constitution, and it is also true that the constitution emanated from the people and not the states and that it was ordained to insure a more perfect union; its objects and its purposes expressed in that instrument presupposes its existence in perpetuity. The denial of the right to enact the ordinance by the municipality is to lessen the effectiveness of the preamble of the constitution of the United States emanating from the people, the source of all power.
 

 The ordinance is a matter of local concern and of local importance, a matter of the ordinary functions of government. It is well established constitutional law that “implied constitutional restrictions are just as effective as those that are directly expressed.” Among these which are implied,
 
 *839
 
 though not expressed, is that the
 
 nation
 
 may not in the exercise of its powers prevent a state from discharging the ordinary functions of government.” (Italics ours.) South Carolina v. U. S., 199 U.S. 437, 26 S. Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737; Hepburn v. Griswold, 8 Wall. 603, 19 L.Ed. 513. Therefore, when this ordinance was passed, the City of Alexandria was performing an ordinary function of government, a right which the nation will not deny. It is the actual infringement on the provisions of the Federal Constitution that is interdicted, not the exercise of the ordinary functions of government by the municipality.
 

 For the reasons assigned, the judgment and sentence appealed from are hereby affirmed.