GEORGE DAY, d/b/a GEORGE DAY'S STUDIO *v.* KLEIN

No. 39734 October 24, 1955 82 So. 2d 831

*Morse & Morse,* Gulfport; *Kenneth Franks,* Philadelphia, for appellant.

*Charles R. Galloway, Owen T. Palmer, Jr.,* Gulfport, for appellee.

ETHRIDGE, J.

■■ ■ This case involves the validity of a "Green River" ordinance of the City of Gulfport, making it unlawful for transient vendors to go in and upon private residences, and in and upon private property and buildings other than residences, without first having been requested or invited to do so by the owner or occupant, for the purpose of soliciting orders for the sale of goods or selling the same. We hold that the ordinance is valid as it applies to soliciting in private residences, but is invalid as to property and buildings other than residences, which includes primarily business offices and stores.

## I.

The suit originated in the Chancery Court of Harrison County, and is here on appeal from a decree sustaining a general demurrer to the bill. The complainant was George Day, a resident of Neshoba County, doing business as George Day's Studio. The defendant Klein was the Chief of Police of the City of Gulfport. A summary of the averments in the bill is as follows: Day's Studio has its principal offices in Philadelphia, Mississippi. Day's plan for the sale of portrait photographs is carried out by employees calling on people in their homes and at their places of business. These employees have samples of portrait photographs by Day, and exhibit these samples to the persons interested in having their photographs made. An appointment is then made through the soliciting employee with a photographer, also an employee of George Day's Studio, who previously locates himself at some central position, usually a hotel, for the purpose of taking photographs. The person having his photograph made pays a down payment, and receives his photograph within a few days. The pho-

tographer who took the picture forwards the exposure to Day's Studio in Philadelphia, Mississippi, where it is developed and returned to the customer. Day uses this method of operation in Mississippi and in parts of Louisiana and Alabama. He guarantees satisfaction, and selects his employees on the basis of honesty. By building a reputation on those two factors his business has prospered. Day paid the Gulfport municipal privilege tax, assessed under Code of 1942, Section 9696-146, upon each person engaged in the business of selling photographic certificates, or making or developing such photographs so procured to be made.

On June 21, 1951, the Mayor and Board of Commissioners enacted Gulfport Ordinance No. 781. Omitting the title and the general repealing clause in Section 7, that ordinance provides:

"WHEREAS, THE Mayor and Board of Commissioners of the City of Gulfport, Harrison County, Mississippi having gone into, studied and considered the matter do hereby find and determine that it is to the best interest of the City of Gulfport and the residents thereof that solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise should be regulated in the City of Gulfport, Mississippi.

"NOW THEREFORE, BE IT ORDAINED BY THE MAYOR AND BOARD OF COMMISSIONERS OF THE CITY OF GULFPORT, MISSISSIPPI, AS FOLLOWS, TO-WIT:

"Section 1: That the practice of going in and upon private residences in the City of Gulfport, Mississippi by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise not having been requested or invited so to do by the owner, owners, occupant or occupants of said private residence for the purpose of soliciting orders for the sale of goods, wares and merchandise and/or disposing of and/or peddling

or hawking the same, is declared to be a nuisance and punishable as such nuisance as a misdemeanor.

"Section 2: That the practice of going in and upon private property and buildings other than residences in the City of Gulfport, Mississippi by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise not having been invited so to do by the owner, owners, occupant or occupants of said private property and buildings other than residence for the purpose of soliciting orders for the sale of goods, wares and merchandise and/or disposing of and/or peddling or hawking the same is declared to be a misdemeanor and punishable as such nuisance as a misdemeanor.

"Section 3: That any person violating the provisions of this ordinance shall upon conviction thereof be fined not more than $100.00 or imprisoned not more than thirty days or both fined not in excess of $100.00 and imprisoned not in excess of thirty days in the discretion of the Court.

"Section 4: That the provisions of this ordinance shall not apply to the sale or soliciting of order for the sale of milk, dairy products, vegetables, poultry, eggs and other farm and garden produce so far as the sale of the commodities named herein is now authorized by law.

"Section 5: That it being deemed by the Mayor and Board of Commissioners of the City of Gulfport, Mississippi that an emergency exists, this ordinance shall go into effect immediately upon its passage.

"Section 6: That should any section or portions of any section or sections hereof be found and determined violative of any constitution or l a w s by competent Courts, such findings shall innowise affect other section, sections or portions of section or sections hereof not found violative thereof."

On August 11, 1954, appellant sent his sales force into the City of Gulfport. They located in a local hotel, and notified the chief of police. Two of appellant's em-

ployees began soliciting orders, Shumate in the commercial area of the city, and Briscoe in the residential area. They were arrested by the city's police for soliciting in violation of Ordinance No. 781, and were released on bail. The bill of complaint charges that this ordinance is void because it is an arbitrary interference with Day's right to conduct a lawful business, it makes a municipal misdemeanor out of something which is not so classed by any state statute, it is not a reasonable regulation but prohibits the doing of a lawful business which is the subject of a state license tax, and it is discriminatory because it exempts in Section 4 certain types of businesses. The bill charges that appellant has no plain, adequate and speedy remedy at law; and that several months before this suit was filed, one of Day's employees was arrested by the Gulfport police for violation of the ordinance, and after his conviction in the municipal court, this employee appealed to the county court, but when the matter came before the county court the city declined to prosecute the action further. Day asked for a temporary and, upon final hearing, permanent injunction restraining the defendant Klein, the Chief of Police, from enforcing this ordinance, and enjoining him from molesting or interfering with any of the employees of Day. The chancellor issued the temporary injunction, upon Day making a $1,000 bond. The final decree of the chancery court sustained defendant's general demurrer to the bill, dissolved the temporary injunction, and complainant refusing to plead further, dismissed the bill of complaint. This appeal is from that decree.

## II.

This section of the opinion is directed to application of the ordinance to soliciting in private residences.

Municipalities derive their powers from the state. There are three statutes which are relevant to this ordinance. Code Section 3374-116 provides: "The municipal governing authorities shall have the power to

make regulations to secure the general health of the municipality; to prevent, remove, and abate nuisances; ... '' Code Section 3374-124 states: ''The governing authorities of municipalities shall have power to make all needful police regulations necessary for the preservation of good order and peace of the municipality and to prevent injury to, destruction of, or interference with public or private property; ... '' The two foregoing statutes are general sources of municipal powers, relating to the abatement of nuisances and the police power of a city.

Code Section 3374-131 is specifically directed to transient vendors and traveling photographers. It was first passed in its present form by Miss. Laws 1950, Chapter 491, Section 131. It provides: ''The governing authorities of municipalities shall have the power to adopt reasonable ordinances for the regulation of circuses, shows, theaters, bowling alleys, concerts, *transient vendors,* theatrical exhibitions, skating rinks, *traveling photographers,* pistol or shooting galleries, amusement parks and devices, and other similar things; and shall have the power and authority to regulate, prohibit, or suppress billiard tables, pool rooms, fortune tellers, cane or knife racks, slot machines and other gambling devices, and the sale or use of fireworks within the corporate limits.'' (Emphasis added.)

Code Section 3374-137 states that municipalities shall have the power to enforce authorized ordinances by a fine of not exceeding $100 or imprisonment not exceeding thirty days, or both.

Appellant makes no serious contention that Ordinance No. 781 is unconstitutional. And there is no merit in such position. Provided the ordinance is a reasonable regulation, as required by Code Section 3374-131, it is valid. In 1951 the Supreme Court of the United States held that a substantially similar ordinance of the City of Alexandria, Louisiana, did not violate any federal

constitutional provisions and was valid. Breard v. City of Alexandria, 341 U. S. 622, 71 S. Ct. 920, 95 L. Ed. 1233, 35 A. L. R. 2d 335, affirming, ibid., 217 La. 820, 47 So. 2d 553 (1950). This type of ordinance is popularly called a "Green River" ordinance, because it apparently was first tested judically in 1931 in a case involving the Town of Green River, Wyoming. Town of Green River v. Fuller Brush Co., 65 F. 2d 112, 88 A. L. R. 177 (CCA 10th 1933). Numerous municipalities in other states have similar enactments. The decisions from those states are divided about equally in either upholding or striking down the ordinance. Anno., 35 A. L. R. 2d 355-380 (1954). It will serve no purpose to discuss them. Apparently in none of the states which have held Green River ordinances to be invalid did the Legislature give specific authority to municipalities to reasonably regulate transient vendors. The Mississippi statute does this. Moreover, the trend in recent decisions from other states is toward recognizing the validity of such ordinances. And of course the split of authority in the cases from other states derives in part from a conflicting appraisal of the interests involved: The interest of the solicitor or peddler in continuing to operate his business, the interest of the individual householder to determine for himself the desirability of being visited by solicitors and peddlers, and the interest of the community in protecting the interests of all of its citizens, whether a particular citizen wants protection or not.

The problem is the interpretation of the above-quoted Mississippi statutes. The narrow issue is whether this ordinance is a reasonable regulation of transient vendors, including traveling photographers, as required by Code Section 3374-131. It is clearly regulatory and not prohibitory. It simply regulates a particular method of doing business, the house-to-house canvassing without invitation. It does not prohibit the calling upon persons in private residences, but merely requires that such calls

be made after invitation of the householder. Although it is prohibitory in the limited sense of forbidding solicitation without invitation, all regulatory legislation is prohibitory in that sense. Solicitation may be made after invitation. Other usual methods of solicitation, such as telephone, radio, television, periodicals, the mail, are open. Breard v. City of Alexandria, 71 S. Ct. 927.

Moreover, the governing authorities of the city have found as a fact that the ordinance was to the best interest of the city and its residents; that transient vendors at private residences should be regulated in that city; and that solicitation by them without prior invitation has become a nuisance. The ordinance recites that the mayor and board of commissioners have ''gone into, studied and considered the matter,'' and then makes the stated finding. Section 5 states that an emergency exists in the city on this subject, and that the ordinance shall go into effect immediately upon its passage. The findings and actions of the legislative body of the city, in its municipal ordinance, are entitled to a rebuttable presumption of truth, reasonableness, and validity. 37 Am. Jur., Municipal Corporations, Sections 175-177. And there is no contradiction of such findings in this record.

Door-to-door canvassing has flourished increasingly in recent years with a ready market furnished by the large concentrations of housing in residential subdivisions. The infrequent and still welcome solicitor to the rural home becomes to some a recurring nuisance in towns when the visits are multiplied. The Constitution's protection of property rights does not make a city impotent to guard its citizens against the annoyances of life. It may reasonably regulate the manner of doing a legitimate business. The usual methods of seeking business are left open by the ordinance, which is regulatory in form. Ordinances such as this may compel the development of a new technique of approach to prospects. And although local retail competition may gain advantages from the location of their stores, the solicitor retains his

flexibility of movement and freedom from heavy investment. The general use in the United States of the Green River type of ordinance shows its adaptation to the needs of the many communities over the country which have enacted it.

Appellant argues that, since he has paid the local privilege tax upon transient photographers, he is engaged in a lawful business and is immunized from municipal regulation. However, the issuance of a privilege license only licenses the business itself, and not a particular method of operation which is found contrary to the best interest of the public. Code Section 9696-215 so states: "The issuance of a privilege license, or the payment of a tax required therefor, shall not make lawful any business, employment, transaction, article or device, or the operation thereof, contrary to any statute of this state, or any ordinance of any municipality thereof." The manner of doing business is subject to the police power of the city. City of Shreveport v. Cunningham, 190 La. 481, 182 So. 649 (1938); Mayor & Aldermen of the City of Vicksburg v. Mullane, 106 Miss. 99, 63 So. 412 (1913); City of Alexandria v. Jones, 216 La. 923, 45 So. 2d 79 (1950); Rowe v. Pocatello, 70 Idaho 343, 218 P. 2d 696 (1950). The occupation of peddling and transient vending of merchandise "possesses distinguishing characteristics of such a substantial nature as to enable legislative authority to place the business into a class and to legislate upon it as a class both in the matter of license fees and in measures of police regulation." Pryor v. State, 162 Miss. 602, 139 So. 850 (1932); 40 Am. Jur., Peddlers, Section 7.

The Supreme Court of Louisiana, in City of Alexandria v. Breard, 217 La. 820, 47 So. 2d 553, 555-556 (1950), which dealt with a similar ordinance, gave an apt and pertinent discussion of the issues: "We are most willing to admit that the solicitors for Keystone Readers Service, Inc., of whom Breard is one, are of the highest character. That does not alter the fact that

there are many types of solicitors who are not as carefully selected, nor as reliable, and whose merchandise does not bear the same stamp of general approval as that furnished by Breard's employer. The protecting purpose of the ordinance is proven by the fact that it is not directed against all soliciting, etc., but only against soliciting in residences without invitation. ... It is purely a regulation, a limited regulation, by a municipality performing an ordinary function of government, the protection of the home. ... A salient feature of this case, which seems to have escaped previous attention, is that, transcendent over the rights which appellant claims are infringed by this ordinance, is a fundamental principle of the law—a man's home is his castle. No one has any vested prerogative to invade another's privacy. Each community knows its own problems best; and if local governments, being as they are closest to the popular will, choose to exercise the sovereign's right to protect a particular class of comparatively defenseless citizens— housewives, we will not intervene to destroy that protection.''

In short, Code Section 3374-124, on the police power, and Section 3374-131, giving municipalities the power to adopt reasonable regulations for transient vendors and traveling photographers, are ample authority for the enactment by the City of Gulfport of its Ordinance No. 781, insofar as it applies to soliciting in private residences in the city. This was a proper exercise of the police power of the city, and is a reasonable regulation of this business, not a prohibition of it.

### III.

On the other hand, we think that Section 2 of the ordinance, which applies to the ''practice of going in and upon private property and buildings other than residences'' by transient vendors and traveling photographers, soliciting business without prior invitation, is invalid. In practical application, Section 2 would pertain

primarily to solicitation in business and merchandise establishments and offices. Yet every place of business in a city impliedly invites the public to enter it for the examination of its goods, merchandise or services offered by the businessman. 2 Cooley, Torts (4th ed. 1932), Section 248, p. 238. To declare the practice of transient vendors going in and upon business property to be a public nuisance, and to provide that this cannot be done without a prior invitation, is to ignore the plainly implied invitation extended by businessmen in general. Moreover, the facts warranting use of the police power to regulate transient vendors in residential areas do not usually exist with respect to business areas. Cf. Lammon v. City of San Antonio, 223 S. W. 2d 533 (Tex. Civ. App. 1949); Slater v. City of El Paso, 244 S. W. 2d 928 (Tex. Civ. App. 1951). For these reasons Section 2 of the ordinance is not, we think, the "reasonable" regulation required by Code Section 3374-131. Hence the trial court was in error in sustaining appellee's demurrer to that part of the bill which sought to enjoin enforcement of the ordinance in the business district of the city.

 █ Section 6 of the ordinance contains the usual separability clause, which manifests the council's intent to consider Sections 1 and 2 as independent and separate provisions. 37 Am. Jur., Municipal Corporations, Section 167 states: "In accordance with general principles ordinarily applicable to municipal ordinances as well as to state statutes, where the provisions of an ordinance are separable and it may fairly be presumed that the municipal council would have enacted one part without the other, the whole ordinance will not be declared void because of the invalidity, such as the unconstitutionality or unreasonableness, of a part."

IV.

 █ Section 4 of the ordinance provides that it "shall not apply to the sale or soliciting of order for the sale of milk, dairy products, vegetables, poultry,

eggs, and other farm and garden produce so far as the sale of the commodities named herein is now authorized by law.'' Appellant contends that this exemption is an arbitrary and unreasonable classification without any basis in fact. Municipal corporations may make proper classifications of persons or things for various purposes of legislation. A municipal regulation, in order to be valid, does not necessarily have to operate on all alike, provided it operates equally on each class embraced within its provisions. In order that it be unlawfully discriminatory, it must discriminate between persons in a like situation. 62 C. J. S., Municipal Corporations, Section 150, pp. 309-311. The distinction made between farm and dairy products and other articles has usually appeared in the Green River ordinances, including the Alexandria ordinance which was upheld in the Breard case. The classification is a reasonable one. Pryor v. State, 162 Miss. 602, 139 So. 850 (1932); Southern Package Corporation v. State Tax Commission, 174 Miss. 212, 164 So. 45 (1935). City of Shreveport v. Cunningham, 190 La. 481, 182 So. 649, 652-653 (1938), dealing with a similar situation, said: ''The persons exempted in Section 4 of the ordinance are engaged in the sale, or in the soliciting of orders of sale, of ice, milk, vegetables, etc., necessary commodities for daily use. They are occupied in supplying a public need from day to day. We assume that this fact was recognized by the City Council of Shreveport in exempting such person in Section 4 of the ordinance from its operation. We also assume that the City Council duly appreciated the public inconvenience that would result from including such vendors and solicitors within the prohibitive terms of the ordinance. Besides, the reasons stated in this opinion for including solicitors and peddlers in the ordinance do not apply to the vendors, or to the solicitors of orders of sale, of such necessary commodities.''

The decree of the chancery court is affirmed insofar as it sustained the demurrer to the prayer of the bill

seeking to enjoin enforcement of the ordinance in residential areas. The decree is reversed insofar as it sustained the demurrer to the part of the bill seeking to enjoin enforcement of the ordinance in private property and buildings other than residences. In the latter respect, the decree is reversed and judgment rendered here, enjoining appellee from enforcing Section 2 of the ordinance and from interfering with any of appellant's employees who solicit orders in private property and buildings other than residences in the city.

Affirmed in part, and in part reversed and judgment rendered for appellant.

*Roberds, P. J.* and *Hall, Kyle, Holmes, Arrington* and *Gillespie,* JJ., Concur.

LEE J., dissenting.

It is true that the courts of nine states and the Supreme Court of the United States have upheld the validity of the so-called "Green River" ordinance, but eleven states, including Arkansas, Florida, Iowa, Kentucky, Maryland, Nebraska, New Jersey, Oklahoma, South Carolina, Texas and Virginia, have held such ordinances invalid. See 35 A. L. R. 2d, pages 358-9-60. Thus a majority, in point of numbers, is against the validity of such ordinances. Day was engaged in the business of a photographer. This is a lawful business, and I do not think a municipality can prohibit carrying on a lawful business unless it is a nuisance per se. King v. City of Louisville, 207 Miss. 612, 42 So. 2d 813; City of Kosciusko v. No Equal Textile Co., 139 Miss. 220, 104 So. 102; Crittenden v. Town of Booneville, 92 Miss. 277, 45 So. 723.

It is true that legislative authority was granted the municipality under Chapter 491, Laws of 1950, Section 3374-131, Code of 1942 Annotated, to adopt reasonable ordinances for the regulation of traveling photographers but such business can not be destroyed under the guise

of regulation. Johnson v. Philadelphia, 94 Miss. 34, 47 So. 526; Dart v. City of Gulfport, 147 Miss. 534, 113 So. 441; Town of McCool v. Blaine, 194 Miss. 221, 11 So. 2d 810.

A vital and necessary part of the business of a traveling photographer is the taking of orders. Under this ordinance, the solicitor can not go to a home until he has first had an invitation to do so. How is he going to get the invitation? It is said that he may use the telephone. But what if the householder has no telephone? It is again said that he may use the mail. But, as a practical proposition how many people will answer letters inquiring if the writer may have permission to call and demonstrate his goods or wares? The use of radio or television is likewise not feasible. It seems to me that this so-called regulation of the business in fact destroys the business, because the traveling photographers will be unable to obtain orders for their goods.

Aggressiveness is the watchword of successful business in this age in which we live. Since when has it become necessary for a householder to have the government save him from the annoyance of a salesman, who is endeavoring to dispose of his goods and merchandise? If he does not wish to buy, he can simply say so; and he should have the intestinal fortitude to say no, rather than to fall back on the edicts of a paternalistic government.

I think the ordinance is invalid and it should be nullified.