**VILLAGE OF BEL–NOR, a Municipal Corporation, Respondent,**

v.

**Alan Lewis BARNETT, Appellant.**

**No. 49041.**

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

Maurice S. Karner, St. Louis, for appellant, Alan Lewis Barnett.

Lester W. Spilker, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

Defendant has appealed from a judgment of the Circuit Court of St. Louis County affirming his conviction in the Chairman's Court of the Village of Bel-Nor, St. Louis County, for violation of Ordinance No. 134 of said village and assessing his fine at $5.00. That ordinance makes it a misde-

meanor punishable by fine of not less than $5.00 nor more than $50.00 for any person to conduct "any solicitation, * * * sales campaign, vending, door to door selling, order taking * * * [involving] use of the street, drives, sidewalks, * * * within the Village of Bel-Nor, or door to door contact with the residents of the Village * * * unless he * * * has first made application for and received a license for such purpose * * *." The cost of the license is $15.00, irrespective of whether any sale is made, and it expires 90 days after issuance.

■ Defendant challenges the validity of that ordinance (as to any act done by him) on grounds it violated Article I, § 8, Cl. 3, of the Constitution of the United States, empowering the Congress "to regulate Commerce * * * among the several States, * * *." In thus challenging the constitutionality of the ordinance, jurisdiction of the appeal lies in this court. Article V, § 3, Constitution of Missouri, V.A.M.S.

The facts are not in dispute. Defendant, a resident of Newark, New Jersey, is temporarily in the City of St. Louis attending Washington University. On the 24th day of June, 1960, he became a door-to-door solicitor in St. Louis County for Periodical Publishers' Service Bureau, Inc., (hereinafter referred to as "Periodical"), whose main office and legal residence is and was at the time herein material in Sandusky, Ohio. However, on June 24, 1960, and prior thereto it had maintained a branch office in the City of St. Louis, as it did in numerous cities. Defendant's duties consisted of door-to-door solicitation of subscriptions to magazines for future delivery, many of which were of general circulation throughout the United States, *but none of which was published in or delivered from any point in Missouri.*

Orders taken by defendant and signed by the subscriber were addressed to Periodical at its home office in Ohio. The magazines ordered and the prices thereof were listed on the face of the order. Each sub-

scription ran for a term of 36 months. The subscriber made a down payment of about three percent of the total of the amount of the subscription price at the time the order was signed and agreed to pay the remainder of the subscription price in 24 monthly installments; nothing was to be paid thereafter. The order was expressly conditioned upon its approval by the home office. When defendant procured such an order, he forwarded it to Periodical's branch office in the City of St. Louis, where it was "processed", that is, checked for its genuineness and for ascertainment of the subscriber's understanding of its terms. If approved at the branch office, it was forwarded from the branch office to the home office, where it was finally approved or rejected. If approved, Periodical, from its home office, sent an order to the publisher or publishers of the magazines ordered, the price of which Periodical agreed to pay to the publisher in accordance with a prior arrangement made with the publisher. Each publisher thereafter sent directly by mail to the subscriber the magazine or magazines ordered by the subscriber. Periodical thereafter collected the purchase price from the subscriber in accordance with the terms of the subscription. Defendant's compensation for orders taken by him was strictly on a commission basis paid by Periodical through its St. Louis branch office, subject to credit of the down payment made by the subscriber when the order was signed.

On the day of defendant's arrest, he had made several door-to-door solicitations in the Village of Bel-Nor but had not, when arrested, obtained any orders. He had no license and, in fact, had no knowledge of the ordinance until he was so advised by the arresting officer.

■ We have been cited to no case nor have we found one that casts any doubt upon the fact that solicitation of orders made under the circumstances here shown constitutes interstate commerce. Many cases, both state and federal, from Missouri and elsewhere, unhesitatingly characterize

the facts here shown to constitute interstate commerce and to place an undue burden upon solicitors engaged in interstate commerce and to render invalid ordinances such as the one here challenged under Article I, § 8, Cl. 3, of the Constitution of the United States. Olan Mills, Inc. v. City of Cape Girardeau, 364 Mo. 1089, 272 S.W.2d 244, and the many cases therein cited; Superior Concrete Accessories v. Kemper, Mo., 284 S.W.2d 482; Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760; Real Silk Hosiery Mills v. City of Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982; Town of Green River v. Fuller Brush Co., U.S.C.A., 10 Cir., 65 F.2d 112, 88 A.L.R. 177; City of Alexandria v. Breard, 217 La. 820, 47 So.2d 553; Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233; City of California v. Riback, Mo., 204 S.W. 389; Fleming v. City of Mexico, 262 Mo. 432, 171 S.W. 321; Jewel Tea Co. v. City of Carthage, 257 Mo. 383, 165 S.W. 743.

Despite the facts shown in the instant case and the general unanimity with which the state and federal courts have held facts analogous to those here presented clearly to constitute unconstitutional interference with interstate commerce, plaintiff contends that defendant was not engaged in interstate commerce and insists that he is subject to the licensing ordinance here in question. In support of that contention plaintiff cites City of Eldorado Springs v. Highfill, 268 Mo. 501, 188 S.W. 68; and City of Brookfield v. Kitchen, 163 Mo. 546, 63 S.W. 825, involving licensing ordinances similar to the Bel-Nor ordinance here challenged by defendant. A detailed recital of the facts in those cases would unduly lengthen this opinion. Suffice it to say that the facts there shown are clearly distinguishable from those here shown. In each of those cases it was pointed out that the facts did not constitute interstate commerce. Indeed, in the City of Eldorado Springs case the court precisely pointed out wherein the facts in those cases distinguished them from the cases of Fleming v. City of Mexico, 262

Mo. 432, 171 S.W. 321, and Jewel Tea Co. v. Carthage, 257 Mo. 383, 165 S.W. 743, both of which are above cited and both of which hold that facts analogous to those here shown constitute an unconstitutional interference with interstate commerce.

Plaintiff also cites the case of McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 576. The facts in that case are extremely lengthy. Suffice it to say that the case involved a New York City uniform tax ordinance to be distinguishable from *licensing* tax ordinances, such as in this case. The gist of the conclusions there reached was that the New York City sales tax which is conditioned on delivery of goods within the state on their purchase for consumption is conditioned on a local activity which, apart from its effect on interstate commerce, is subject to the state taxing power, and the effect of the tax, *though measured by the sales price*, does not invalidly discriminate against or obstruct interstate commerce *as against contention that, because the tax is measured by gross receipts from interstate commerce, it in effect reaches commerce carried on both within and without New York state*. The case is not in point on the question here involved, as has been pointed out in numerous later cases.

Plaintiff also cites cases dealing with city ordinances that have become widely known as "Green River Ordinances", taking their name from the case in which their validity was first challenged. (We have hereinabove also cited them in support of the conclusion herein reached that the licensing tax here challenged constitutes an unconstitutional interference with interstate commerce under the facts here shown.) Those cases are: Town of Green River v. Fuller Brush Co., U.S.C.A., 10 Cir., 65 F.2d 112, 88 A.L.R. 177; City of Alexandria v. Breard, 218 La. 820, 47 So.2d 553; Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233. (An earlier [1947] case of Breard v. City of Alexandria, D.C., 69 F.Supp. 722, is also cited, but it is to the

same effect as the later Breard cases and need not be herein discussed.)

The Town of Green River case originated in the U. S. District Court, 60 F.2d 613. In that court the Fuller Brush Company enjoined the Town of Green River, Wyoming, from enforcing an ordinance declaring: "Section 1. The practice of going in and upon private residences in the Town of Green River, Wyoming, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor." (Note that no *license tax* is required or involved.) The second section thereof requires its enforcement by the town marshal and makes it his duty to suppress and abate any such nuisance. The third section subjects any person convicted of such a nuisance to a fine of not less than $25 or more than $100.

The Town of Green River appealed to the U.S.C.A. of the Tenth Circuit. There Fuller Brush again contended that enforcement of the ordinance would deprive it of its property without due process of law, deny it equal protection of the law, and would interfere with interstate commerce in violation of the U. S. Constitution. The court noted, 65 F.2d 112, 114: "[T]he ordinance here under consideration did not attempt to prohibit any of the parties named from selling their wares, either of goods carried with them or on samples for future delivery. It denounces a particular practice of such vendors or their agents. We must assume that the practice existed in the town as the first section states, and that it had become annoying and disturbing and objectionable to at least some of the citizens. We think like practices have become so general and common as to be of judicial knowledge, and that the frequent ringing of doorbells of private residences by itinerant vendors and solicitors is in fact a nuisance to the occupants of homes." And the court, after further elaboration of the purpose of and justification for the regulation of such intrusions upon the privacy to which homeowners are entitled, concluded, loc. cit. 115: "We are also of opinion that the ordinance and its enforcement would not encroach directly or indirectly on appellee's constitutional rights, nor interfere with interstate commerce. It does not purport to interfere in any respect with appellee's right or privilege of selling and transporting its wares in interstate commerce. It is free to carry on a business of that sort except to solicit orders in the manner specified in the ordinance, and obviously it could do so in many ways other than imposing itself upon and disturbing the residents of the town as prohibited by the ordinance."

In Breard v. City of Alexandria, 1951, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233, the United States Supreme Court considered an ordinance of that city identical in substance with the Green River ordinance. There Mr. Justice Reed, speaking for a majority of the court, referred at length to the observations made in the Green River case. He was careful to concede, however, that solicitors of orders for subsequent interstate shipment were immune from *licensing fees* because of their interference with interstate commerce (citing cases); that this immunity was based upon the theory of protection of interstate commerce against discrimination made most apparent by *fixed sum license fees regardless of sales* (citing McGoldrick v. Berwind-White Coal Mining Company, supra, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 and other cases). He, however, went on to state, 71 S.Ct. loc. cit. 931, that where state legislation was not an added burden upon sales in interstate commerce or an exaction for the privilege of doing interstate commerce, but was merely a regulation of local matters, different considerations applied; and he then concluded, loc. cit. 931: "We think Alexandria's ordinance falls in the

classification of regulation. The economic effects on interstate commerce in door-to-door soliciting cannot be gainsaid. To solicitors so engaged, ordinances such as this compel the development of a new technique of approach to prospects. Their local retail competitors gain advantages from the location of their stores and investments in their stock but the solicitor retains his flexibility of movement and freedom from heavy investment. The general use of the Green River type of ordinance shows its adaptation to the needs of the many communities that have enacted it. * * *"

In a dissent written by Mr. Justice Vinson (concurred in by Mr. Justice Douglas), he insisted that despite the fact that the ordinance exacted no license fees, it yet constituted an interference with interstate commerce in violation of the Constitution. In the argument of that point, the dissenting opinion so tersely emphasizes the uniform holding of immunity of solicitors engaged in interstate commerce from license taxes that we quote therefrom, loc. cit. 934: "At least since the decision in Robbins v. Shelby County Taxing District, 1887, 120 U. S. 489, 497, 7 S.Ct. 592, 596, [30] 20 L.Ed. 694, this Court has regarded the process of soliciting orders for goods to be shipped across state lines as being interstate commerce as much as the transportation itself. Under the line of cases following this principle, reexamined and reaffirmed in Nippert v. Richmond, 1946, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760, the process of solicitation for interstate commerce cannot be subjected to taxes, licenses or bonding requirements that in their practical operation discriminate against or unduly burden interstate commerce. The Court does not today purport to overrule this line of decisions. * * * Nor does the opinion dispute that this ordinance has a severe economic impact upon the substantial interstate business of appellant's employer, as well as the entire magazine industry which derives 50% to 60% of its annual subscription circulation from the very type of solicitation prohibited by this ordinance. I disagree with the Court in its holding that an ordinance imposing a 'blanket prohibition' can be sustained under the Commerce Clause as mere regulation."

The reasoning in the cases above cited in behalf of the contentions made by both of the parties in the instant case leads us to the conclusion that the ordinance here challenged is, as to the activities of this defendant, violative of Article I, § 8, Cl. 3, of the Constitution. (In so deciding, we should note that plaintiff also cited the case of Dunston v. City of Norfolk, 177 Va. 689, 15 S.E.2d 86, decided in 1941 prior to the decision in the Breard case, supra, which was decided in 1951. In that case a resident of the city with a fixed place of business therein acted as a "local representative" of a foreign tailoring company. The ordinance required all retail merchants to pay a (so-called) "license tax", the amount of which was based upon his gross sales. It may or may not be construed as being in conflict with the decisions upon which this opinion is based. Two of the judges dissented upon grounds that it was. Assuming it to be not only in conflict with the Missouri cases but with the federal cases above cited, we think it can in no wise be considered persuasive.)

■■ Finally, plaintiff says that defendant did not timely raise the issue of unconstitutionality. In that assertion, plaintiff overlooks the facts shown in the record. As soon as the Village closed its evidence in chief at the trial in the Chairman's Court of the Village of Bel-Nor, the defendant orally challenged the constitutionality of the ordinance and at the close of all of the evidence in that court moved for dismissal of the case on the grounds of its unconstitutional interference with interstate commerce. Immediately following rendition of the judgment in the Chairman's Court, defendant moved to set aside the verdict and for entry of judgment in his favor on the same grounds. At the trial in the Circuit Court, it was stipulated that it was the intention of the parties to submit the whole case on the transcript of the record made in

the Chairman's Court, without objection *except for those offered at the original trial as they appear in the transcript of the evidence*; and the case was so tried and submitted. On March 7, 1961, the trial judge (of the Circuit Court, having tried and considered the case upon the record made in the Chairman's Court) entered judgment as stated. On March 7, 1961, defendant filed "motion to set aside judgment and enter judgment in favor of defendant or grant defendant a new trial." One of the grounds asserted therein was that "the Court erred in rendering a judgment in favor of the plaintiff for the reason that the ordinance under which defendant was convicted is in violation of Section 8, Article I of the United States Constitution and the decisions of the United States Supreme Court." Thereafter, ninety days elapsed without any ruling thereon by the court and the motion was, therefore, deemed overruled for all purposes. S.Ct. Rule 78.04, V. A.M.R. Defendant appealed. Plaintiff's contention that defendant did not timely challenge the constitutionality of the ordinance is also without merit.

For the reasons herein stated, the judgment is reversed.

All concur.