TATE, Judge
(concurring).
The writer concurs ultimately with the majority holding that the Commissioner’s regulation prohibiting new dairy businesses from selling below the lowest price of their competitors in their trade area is, as worded, invalid as exceeding the statutory authority delegated to him by the legislature, which pertinently is only to prevent the sales by processors, handlers, and distributors of milk products for “less than cost” LSA-R.S. 40:940.5. But, despite the really excellent argument by able counsel for the defendant-relator, I do not think that the Commissioner’s regulation is shown to be unreasonable or discriminatory.
The Commissioner seriously claims that he cannot administer the Orderly Milk Marketing Act — with a statutory duty as “the instrumentality of the state * * * to execute the legislative intent” thereof, LSA-R.S. 40:940.12, subd. A — unless he is given the power to regulate the prices of new businesses, and that the present regulation is a necessary incident of such statutory power and duty. See LSA-R.S. 40:940.12, subds. A, F, quoted in majority opinion. There is considerable justification in the present record for such a claim.
It is well to state also what is not at issue.
First, the wisdom or not of the statutory enactment and its stated policy of affording an adequate milk supply by protecting smaller producers and distributors from unrestricted price-competition of “business organizations financially strong enough to sell below their own costs for an extended period of time” (Preamble, Act 193 of 1958), is a matter solely for the legislature and one with which the courts can have no concern.
Second, this court cannot be concerned with the constitutionality of the legislation, upheld as valid by our State’s highest court. Schwegmann Bros. Giant Super Markets v. McCrory, 237 La. 768, 112 So.2d 606.
Third, the regulation in question — applying alike to all new dairying businesses — is not invalid as being discriminatory or a denial of equal protection of the laws, for a statute or its administration, which is applicable alike to all persons in similar circumstances does not deny equal protection *308 of the laws to persons in such a category, even though other persons differently classified are treated differently, providing that the classifications are not arbitrary and unreasonable and unrelated to the aims for which the statute is validly enacted. State v. Morgan, 238 La. 829, 116 So.2d 682; Louisiana Motor Vehicle Commission v. Wheeling Frenchman, 235 La. 332, 103 So.2d 464; Louisiana State Board of Medical Examiners v. Beatty, 220 La. 1, 55 So.2d 761; City of Alexandria v. Breard, 217 La. 820, 47 So.2d 553; Standard Homestead Ass’n v. Horvath, 205 La. 520, 17 So.2d 811; Lakeside Day Care Center v. Board of Adjustment, La.App., 1 Cir., 121 So.2d 335, certiorari denied. Further, the classification is presumed to be reasonable, and the burden is on the person attacking it to prove to the contrary. Louisiana Motor Vehicle Commission v. Wheeling Frenchman, above-cited; Louisiana State Board of Medical Examiners v. Beatty, above-cited.
With regard to the present record, I think it is fair to state that, although the defendant stated that he was operating his new business at a profit, the unanimous opinion of all the dairy witnesses and the Commissioner’s experts was that it is impossible for a new business, with its initially lower volume, to sell dairy products at a unit-cost lower than the unit-cost of established businesses with their necessarily (at least initially) higher volume. Under LSA-R.S. 40:940.2(12), the cost per unit of the product sold includes a great number of items such as “depreciation”, “maintenance”, “advertising”, “licenses”, “taxes”, “fees”, “insurance”, which, when divided on a necessarily lower volume of milk to be sold in the first hour or on the first day or during the first week by a new distributor, must obviously greatly increase the cost per unit of each of these first units sold, as compared with the unit cost of the established producers with a stable and larger volume.
Both at the hearing which preceded the adoption of the regulation and also at the trial of this matter below, it was indicated that there are a great number of variable cost-items in the milk market, fluctuating from day to day and from season to season, so that 12 months was adopted as the most reasonable and fair basis upon which to determine the average cost per unit.
It should also be added that the evidence shows that in some periods of the year, when milk supplies are plentiful, premium prices are paid in order to assure a supply during the season of the year when milk is scarce. (In the latter periods, the quota or “base” established by the amount of milk then sold to a processor, will determine the amount of milk bought at premium prices during the periods of the year when much more milk is available than is needed for retail consumption.) This is an annual experience of the milk industry with sufficient relevancy to the determination of unit costs as to justify the use of a 12-months business yardstick.
In the case of new dairy businesses, the witnesses at the administrative hearing, as well as the Commissioner’s witnesses at the trial, felt it to be impossible to determine the unit-cost for new firms without the yardstick of a year’s business costs, when there would be adequate experience to determine the per unit-item for such variable annual costs as, for instance, maintenance. To require the new dairy business to supply the Commissioner his business expenditures each day or each week would obviously create great hardship upon a new firm and would also involve a great administrative burden upon the Commissioner. Or to charge all the first day’s or first week’s advertising costs to the first day’s or first week’s business volume might drive the new firm’s unit-cost so high as to prevent it from competing at all with the lower prices of its more established competitors.
The effects of the defendant’s price competition is very dramatically illustrated by the present record where, if Borden cuts its price to meet the defendant’s and also proportionately cuts the price it pays to the local small dairy producers who supply *309 Borden with milk for the local market, then these local dairy farmers, with their low margin of profit, will be forced out of business.
However, while these small producers naturally feel that the defendant must be selling his milk at below cost, or else must have been furnished by Sealtest with milk at below its cost, since they themselves could not profitably furnish milk for processing and distribution at defendant’s prices, it must be admitted that there is no evidence to this effect. Further, the regulation in question ipso facto prohibits a new distributor from selling his milk at lower than his lowest competitor, even if (which the experienced witnesses deemed to be impossible) he could distribute his milk at a lower cost than his established competitors could. As adopted, the regulation in question does not permit the new distributor to prove to the Commissioner that his unit costs are actually lower than the lowest prices of his competitors, and thus to prove that in a particular instance sale of his milk at such lower price does not violate the legislative act administered by the Commissioner. The regulation therefore may in some few instances prohibit conduct not violative of the statute, and to that extent the regulation is invalid as exceeding the statutory authority delegated to the Commissioner.[1]
At the same time, on the basis of the present record, speaking for myself alone, I think the Commissioner might cure the de-feet in his regulation if the last sentence of Section 7, quoted in the majority opinion [2], were redrawn so as to provide instead, e. g., that “In the case of a person beginning business, his unit cost shall be presumed to be not less than the lowest price within his trade area, unless by adequate showing before the Commissioner another unit cost is proven.”
Before closing, the writer does not think it inappropriate to observe that the purpose of the legislation was not, as sometimes assumed by the Commissioner’s witnesses, to prohibit price-competition, itself, but only to prohibit price-competition based upon the sale of milk products at below the cost to the handler or retailer. Providing that the unit-cost is not illegally lowered by securing a larger volume through such statutorily prohibited competition, any handler such as the defendant does not violate the statute by selling milk products lower than his competitors, if he does not sell them below his own cost. Although the regulation in question is intended only to prevent a new business (or an old firm in the guise of a new outlet) from disrupting the orderly marketing of milk by the means of illegal price-competition, it might also for instance prevent a new firm from selling its milk at a legal (i. e., not below cost) price if the other distributors in the local market had somehow established an artificially high price.
For the reasons perhaps too fully stated above, the writer ultimately concurs in the *310 conclusion of his learned brethren of tlie majority.
On Application for Rehearing.
Rehearing denied, en Banc.

. It might well be argued that the evidence introduced proves that the regulation was reasonably calculated to advance the aim of the legislative provisions and was thus within the statutory power of the Commissioner “to adopt such other rules, regulations, and orders necessary or appropriate to enforce the provisions” of the statute. LSA-R..S. 40:940.12, subd. E\ In view of the strong expert and lay testimony that a new distributor’s initial unit-cost simply cannot be lower than the lowest price of his competitors in the trade area, and in view of what I feel the unquestioned power of the Commissioner at least to provide a presumption to such effect, I bad and have some doubt that the defendant could be entitled to question the regulation as prejudicial in the absence of stronger proof than his own self-serving statement that he was not selling at below his own cost, uncorroborated by records or any concrete evidence.

. “ * * * In the case of a person beginning business, his price established with the Commissioner shall not be less than the lowest price within his trade area.”