**WILD CINEMAS OF LITTLE ROCK, INC. et al., Plaintiffs,**

v.

**Wilbur C. BENTLEY et al., Defendants.**

**No. LR C 77 228.**

United States District Court, E. D. Arkansas, W. D.

Oct. 17, 1980.

John H. Weston, G. Randall Garrou, of Brown, Weston & Sarno, Beverly Hills, Cal., Robert J. Brown, Little Rock, Ark., for plaintiffs.

Larry D. Vaught, Deputy Pros. Atty., Joseph H. Purvis, Deputy Atty. Gen., James F. Dowden, Asst. Atty. Gen., Lester A. McKinley, Asst. City Atty., Little Rock, Ark., for defendants.

## OPINION AND ORDER

OVERTON, District Judge.

This case presents the Court with what Mr. Justice Harlan referred to as the "intractable problem" of obscenity. *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) (Harlan, J., dissenting). Pending before the Court for over three years now has been plaintiff Wild Cinemas' action for declaratory injunctive relief against the Arkansas obscenity statute, Act 464 of 1977 (Ark.Stat.Ann. § 41–3501 et seq.). Plaintiff's cause of action is based on 42 U.S.C. § 1983 and the allegation that the statute's overbreadth and vagueness violate its rights under the First and Fourteenth Amendments to the United States Constitution. The Court's jurisdiction is founded in 28 U.S.C. § 1343(3). The power to issue declaratory judgments is codified as 28 U.S.C. § 2201.

This case was filed before this member of the Court was appointed to the bench. Plaintiff's original application for a Temporary Restraining Order was denied by the late Judge Shell. The case lay dormant for some two and one half years since there were no prosecutions of plaintiff under the statute. In August of this year the application for a temporary restraining order was renewed by plaintiff, which operates two adult theaters in Little Rock. Plaintiff alleged a change in the prosecutor's enforcement policy which threatened it with great and irreparable harm. The matter was set for hearing on September 12, 1980, at which time this Court granted plaintiff a preliminary injunction against enforcement of the Act. On further consideration of the facts as stipulated by the parties and the cases discussed in the parties' several excellent

briefs and memoranda, the Court concludes that it should not abstain from consideration of the case, that portions of the Act are substantially overbroad and therefore unconstitutional, and that the appropriate remedy in this case is in the form of a declaratory judgment but not an injunction. Judgment will be entered in accordance with this Opinion and the preliminary injunction will be dissolved.

## I. Abstention [1]

■■■ The defendants have argued in their briefs that the abstention doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), should apply here. Abstention appears to be particularly inappropriate for a number of reasons. Abstention is essentially an equitable doctrine; its exercise lies in the sound discretion of the federal chancellor, *Railroad Com'n v. Pullman, supra*.[2] The doctrine can be said to require the federal court to abstain from decision of an important constitutional question if resolution of a doubtful or ambiguous question of state law in the same case could avoid the constitutional issue. In such a case, the federal district court should refrain from consideration of the case until proceedings have been brought in state court to answer the difficult question of state law. Of course, only the state law claims need be submitted to the state court. *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Government Employees v. Windsor*, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957).

■■ Several factors in the instant case counsel against abstention. Most obvious is the fact that this suit has been pending since 1977. The parties have filed volumi-

nous pleadings and doubtless expended hundreds of hours in preparation of briefs and on other aspects of the case. To say the least, judicial economy favors resolution of the action here and now. Abstention tends to be a rather costly doctrine from the standpoint of the parties; and the Supreme Court has emphasized "the high cost of abstention when the federal constitutional challenge concerns facial repugnance to the First Amendment," *Procunier v. Martinez*, 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974).

A second consideration counseling against abstention in this case is that the Arkansas statute in question is quite clear in its meaning. The allegedly overbroad portions of the Act are those sections which define obscenity (both "obscene performance" and "obscene material") to include "nudity," "sexual conduct," and "sexual excitement" as defined in the Act. Although the Act has not been construed by the Arkansas Supreme Court, the possibility of a limiting construction which would sufficiently narrow these sections seems nonexistent:

(5) "Nudity" means uncovered, or less than opaquely covered, post–pubertal human genitals, pubic areas, the post–pubertal human female breast below a point immediately above the top of the areola, or the covered human male genitals in a discernibly turgid state. A female breast is considered uncovered if the nipple only or the nipple and the areola only are covered.

(11) "Sexual conduct" means human masturbation, sexual intercourse, or any touching of the genitals, pubic areas, or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification.

---

1. There is the suggestion in some of the parties' memoranda to the Court that the comity doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), should preclude our consideration of the case. The *Younger* doctrine is, however, inapplicable in that there is not and never has been a state court proceeding against the plaintiff under this statute. *Morial v. Judiciary Com'n of State of Louisi-*

*ana*, 565 F.2d 295, 299 (5th Cir., *en banc*, 1977). *See also, Moore v. Sims*, 442 U.S. 415, 425, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979).

2. *But see Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), where the doctrine was applied in a diversity case.

(12) "Sexual excitement" means the condition of human male or female genitals or the breasts of the female when in a state of sexual stimulation.

In other sections of the statute, "Obscene material" is said to mean that material which:

(a) Depicts or describes in a patently offensive manner nudity, sadomasochistic abuse, sexual excitement, sexual conduct, or hard–core sexual conduct;

(b) Taken as a whole, appeals to the prurient interest of the average person, applying contemporary statewide standards; and

(c) Taken as a whole, lacks serious literary, artistic, political, or scientific value.

"Obscene performance" is defined as "a play, motion picture, dance, show, or other presentation, whether pictured, animated, or live, performed before an audience and which in whole or in part depicts or reveals *nudity, sexual excitement, sexual conduct, hard–core sexual conduct, or sado–masochistic abuse ..."* with the same three qualifications as above which are designed to meet the so–called tripartite test of obscenity. *See Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973).[3]

■ An important factor in the Court's consideration of abstention under the *Pullman* doctrine is the relative clarity or ambiguity of the state law in question. *Railroad Com'n v. Pullman, supra; Baggett v. Bullitt*, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1964). In the instant case there is simply no ambiguity in the statutory definition of nudity. The same may be said of the definitions of "sexual conduct" and "sexual excitement" which are likewise challenged on grounds of overbreadth. It may be argued these definitions are vague in that they fail to state whether the prohibited conduct must be clothed or unclothed. This is certainly a problem with the statute, but the problem

is more one of overbreadth than of vagueness. Since the statute does not specify, it is susceptible of application to either clothed, partially clothed, or nude persons or representations. The clarity of Act 464 of 1977 makes an acceptable limiting construction virtually impossible and thereby counsels against the Court's abstention in this case. This Court has previously held abstention inappropriate where there are no substantial problems of statutory construction and where delay would prejudice constitutional rights. *Shelton v. McKinley*, 174 F.Supp. 351, 355 (E.D.Ark.1959).

Moreover, this case does not seem capable of a construction which would place it within one of the three categories said to be appropriate for abstention in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–817, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

## II. Standing and Ripeness

■ A few words on the subject of standing to sue seem in order in light of defendants' contention that films shown by Wild Cinemas' theaters would violate the Act even if the allegedly constitutional portions are excised. The point of this argument is that plaintiff's exhibitions constitute hard–core pornography which is not constitutionally protected. The Court finds it unnecessary to make a factual determination of this allegation because the law is clear that, even if defendants' allegations are true, it would not affect Wild Cinemas' standing to sue: "We give a [party] standing to challenge a statute on grounds that it is facially overbroad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute because of the 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'" *Bigelow v. Virginia*, 421 U.S. 809, 816, 95 S.Ct. 2222, 2229, 44 L.Ed.2d 600 (1975), quoting *NAACP v. Button*, 371 U.S. 415, 433, 83

---

**3.** These statutory definitions are, of course, relevant to plaintiff's claim that the inclusion of "mere nudity" in the definition of obscenity is prohibited by the Supreme Court's holding in

*Jenkins v. Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), that "mere nudity" may not be constitutionally prohibited.

S.Ct. 328, 338, 9 L.Ed.2d 405 (1963). *See also, Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965). The cited cases leave no doubt as to Wild Cinemas' standing to attack the statute on First Amendment grounds.

■ There has been, at some points during the course of this lawsuit, a question whether there was a sufficiently serious threat of enforcement of the act to satisfy the case and controversy requirement of Article III. We treat this problem under the general rubric of "ripeness". The threat of prosecution has never been fulfilled. The Court thinks this conduct in no way improper; in fact it was an expression of deference to the instant litigation. Prosecutor Bentley has apparently found it appropriate to pursue so—called "hard—core violations" of the Act which, it was believed, would not be subject to even arguable constitutional protection. Plaintiff has declined to.enter into an agreement with the Prosecutor's Office as to what sorts of films would be allowed or disallowed under the Prosecutor's new policy.[4] The Court has no difficulty in finding this change in position by the defendant Bentley constitutes a sufficient threat of enforcement to make the case ripe for adjudication.

The case at bar seems remarkably similar in this respect to *Times Film Corp. v. Chicago*, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961). There, plaintiff refused to submit a film for review by the censorship board. After being denied a permit to show the movie, it sought injunctive relief in the federal district court on grounds the ordinance was void on its face as a prior restraint. The Supreme Court reversed the holding of both the district court and the court of appeals that the suit was unripe. Although Wild Cinemas has not been required to seek prior approval of any given film, we see great similarity in the Prosecutor's offer of an agreement as to what types of films would be assured of non—prosecution. We think it beyond question that plaintiff need not subject itself to prosecution or arrest in order to present a justiciable controversy.

## III. Overbreadth

We now turn to the merits of the case and plaintiff's allegation, which we find dispositive, that portions of Act 464 are unconstitutional because substantially overbroad.[5] The Court at this point does not feel constrained to delineate the complex history of obscenity law in Supreme Court decisions since *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Suffice it to say that the three—prong test evolved from *Roth*, through *"Memoirs of a Woman of Pleasure" v. Attorney General*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), and was most recently reformulated in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

■ For a finding of obscenity to satisfy the tripartite test of *Miller*, the trier of fact must address the questions: "(a) whether 'the average person, applying contemporary community standards' would find the work, taken as a whole, appeals to the prurient interest, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."[6] 413

---

4. Plaintiff alleges it was offered an opportunity to enter into such an agreement and that other operators of adult cinemas in the Little Rock area did make such an agreement with the prosecutor's office. The offer of agreement was apparently in conjunction with the Prosecutor's decision to pursue "hard—core" violations of the Act.

5. The Court notes only in passing defendant's novel contention, see p. 10 of Defendant's Response to Plaintiff's Memorandum Opposing

Defendant's Motion to Dismiss, that any overbreadth in the statute is "not substantial." In the area of First Amendment concerns we think it very doubtful that there is any room for such a thing as insubstantial overbreadth.

6. The Court's evolving view of obscenity has been described as a movement "from a view in which the obscene was unprotected *because* utterly worthless *(Roth)*, to an approach in which the obscene was unprotected *if* utterly worthless *(Memoirs)*, to a conclusion in which

U.S. at 24, 93 S.Ct. at 2614. The Court in *Miller* went on to say that under its decision "no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written and construed." 413 U.S. at 27, 93 S.Ct. at 2616. Chief Justice Burger's opinion for the Court further stated some examples of what types of material could satisfy the second prong of the test as patently offensive sexual conduct:

> "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
> "(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

The Supreme Court's subsequent decision in *Jenkins v. Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), represents an important qualification or corollary to the *Miller* doctrine. There the Court unanimously reversed a Georgia obscenity conviction for exhibition of the film *Carnal Knowledge*. Justice Rehnquist, speaking for the Court, stated that juries do not have unbridled discretion in determining what is patently offensive under the *Miller* criteria. He noted that while the examples stated above were not intended to be an exhaustive list of what might be considered obscene, "it certainly was intended to fix substantive constitutional limitations deriving from the First Amendment, on the type of material subject to such a determination." 418 U.S. at 160–161, 94 S.Ct. at 2754. The Court viewed the film personally and found that, although it contained occasional scenes of nudity, "nudity alone is not enough to make material legally obscene under the *Miller* standards." *Id.* at 161, 94 S.Ct. at 2755. What nudity existed in the film, which did not include any exhibition of the actors' genitals, was found to be "simply not the 'public portrayal of hard core sexual conduct for its own sake, and for ensuing commercial gain' which we said was punishable in *Miller*." *Id.*

It is in light of this language from *Jenkins* that the alleged overbreadth of Act 464 must be judged. The language quoted from *Jenkins* actually makes much of the Court's task quite simple. As noted earlier, the Act defines obscenity to include nudity. The definition of nudity is unexceptional: "uncovered, or less than opaquely covered, post–pubertal human genitals, pubic areas, the post–pubertal human female breast ... or the covered human male genitals in a discernibly turgid state." This definition of nudity is perhaps arguably unclear in points. But vagueness is not the fatal flaw. The problem is one of overbreadth in that the inclusion of mere nudity as a basis for finding obscenity sweeps in conduct and materials which *Jenkins v. Georgia* held was protected by the First Amendment. To reiterate: "nudity alone is not enough to make material legally obscene under the *Miller* standards," *Jenkins,* 418 U.S. at 161, 94 S.Ct. at 2755.

The State argues the inclusion of nudity as a basis for obscenity is not unconstitutionally overbroad because nudity is qualified by the three prongs of the *Miller* test found in the statute. In other words, "mere nudity" will not result in a finding of obscenity. Only nudity which is "patently offensive" and which "(b) taken as a whole appeals to the prurient interest of the average person, applying contemporary statewide standards; and (c) taken as a whole, lacks serious literary, artistic, political, or scientific value." The State is undoubtedly correct in its statements that these additional statutory requirements are intended to restrict the types of nudity which may be found obscene. It is also agreed that inclusion of these restrictive qualifications is specifically required by *Miller v. California.*

It is clear, however, that the State has misread the import of *Jenkins.* Although the conviction in *Jenkins* came before *Miller v. California, supra,* the case was judged under the standards set out in *Miller.* The Court noted that even though the criteria

---

obscenity was unprotected even if *not* 'utterly' without worth *(Miller)*." L. Tribe, *American*

of *Miller* are essentially factual questions, the jury's discretion is not limitless. That a jury finds nudity meets the test of *Miller* is not enough to support a finding of obscenity: "It would be wholly at odds with *Miller* to uphold an obscenity conviction based upon a defendant's depiction of a woman with a bare midriff, even though a properly charged jury unanimously agreed on a verdict of guilty." *Jenkins*, 418 U.S. at 160–161, 94 S.Ct. at 2754. The Court in *Jenkins* emphasized a distinction between "hard core sexual conduct" and mere nudity. Simple nudity stands in sharp contrast to those things which *Miller* said a State could legitimately prohibit: "representations or descriptions of ultimate sexual acts . . ." and "representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals". See 418 U.S. at 160–161, 94 S.Ct. at 2754. There is no doubt that the inclusion of nudity in the description of obscenity under Act 464 is unconstitutionally overbroad under the holding of *Jenkins v. Georgia.*

■ Serious questions of overbreadth are also raised by the inclusion of "sexual excitement" and "sexual conduct" in Act 464's definition of obscenity. As noted earlier, sexual excitement "means the condition of human male or female genitals or the breasts of the female when in a state of sexual stimulation." The Act does, of course, require that such conduct or depiction meet the tripartite test of *Miller* before being deemed obscene. But this qualification does no more to eliminate the overbreadth problem with this section than with nudity. One problem with this portion of the Act is that it, like the definition of sexual conduct, does not specify whether the prohibited conduct must be nude or clothed. The State argues that "obviously" only unclothed activity is the object of the act, and that it is possible for an Arkansas jury to apply the statute in a constitutional manner. Unfortunately, this argument misses the point entirely. The question is not whether the Act is capable of constitutional application, but rather whether its alleged overbreadth makes the Act susceptible of sweeping and improper applications. It seems conceded that the conviction of a braless, perhaps scantily clad woman who found herself in violation of the Act because of a chill in the air or the rough texture of her blouse would be unacceptable. Yet the language of the statute seems to permit such a conviction, and it is not unforeseeable that a jury could find such a display meets the tripartite factual test contained in the statute.

Moreover, in light of *Jenkins*, it is at least doubtful that a photograph of a woman nude from the waist up and with her breasts in an apparent state of sexual excitement could be found obscene on the basis of simple nudity. This is not the type of hard core sexual conduct which *Jenkins*, discussing *Miller*, says may be prohibited. Yet such a photograph clearly fits the definition of the statute and would be obscene if a jury could be found to agree that the three–prong test is met. As this portion of the Act, by its terms, sweeps in conduct which may not constitutionally be prohibited, *Jenkins v. Georgia, supra*, it is unconstitutionally overbroad.[7]

■ The overbreadth problem also exists in Act 464's definition of "sexual conduct" (a basis for finding obscenity provided the tripartite test is met) to include, *inter alia*, "any touching of the genitals, pubic areas, or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification." As with the definition of sexual excitement, the statute's prohibition is not limited to the unclothed. At the recent hearing, counsel for the State indicated that the language of the statute could conceivably be applied to a couple dancing cheek to cheek in that the

---

**7.** It should be noted that the sexual excitement portion of the Act does not appear to be overbroad or in any way deficient in its prohibition of depictions of nude male genitals in a state of sexual excitement. This conduct would, however, appear to be also covered by statute's definition of "hard–core sexual conduct" as including "lewd exhibition of genitals."

man's chest would likely be in contact with his partner's breasts. And in some quarters, this might be sufficiently offensive to community standards to satisfy a jury that the three–prong test was met. In fact, the language of this portion is so broad that the possibilities for sweeping and improper applications are as limitless as the human imagination. The slightest pat on the hindquarters, so common in professional football, would be covered by the statute if the motive of sexual gratification or stimulation is inferred and the jury could be convinced that the other two portions of the test are met. This is, admittedly, extremely unlikely. But it is not at all unlikely that the statute could be applied to any romantic caress on the screen or stage which the jury found so distasteful as to meet the three–prong test. This was, of course, exactly the case with *Carnal Knowledge* in *Jenkins*. It is clear that the inclusion of such an extraordinarily broad definition of sexual conduct as a basis for finding obscenity is unconstitutionally overbroad. It attempts to sweep in conduct which may not be prohibited in a free society.

### IV. Conclusion

The Court does not take lightly the notion of striking down even a portion of a statute duly enacted by the people of Arkansas through their General Assembly. It is clear under present constitutional doctrine that obscenity is unprotected by the First Amendment. The crux of the problem lies in the definition of obscenity. The crucial importance of First Amendment freedoms means that the definition of obscenity is a matter deserving the highest degree of care. This Court has sought to apply this degree of care in its analysis of the problem presented and also in its selection of an appropriate remedy.

It is determined that a declaratory judgment should be granted in accordance with the analysis of the Act set out above. To summarize and clarify the holding in this case, the following sections of Act 464 of 1977 are unconstitutionally overbroad and therefore unenforceable:

(1) those portions of the statute (Ark. Stat.Ann. § 41–3501(6) [41–3502(6)] and 41–3501(7) [41–3502(7)]) which defines obscene material and obscene performance to include nudity;

(2) that portion of the statute (Ark. Stat.Ann. § 41–3501(11) [41–3502(11)]) which defines "sexual conduct" to include "any touching of the genitals, pubic areas, or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex";

(3) those portions of the statute (Ark. Stat.Ann. § 41–3501(6) and (7) [41–3502(6, 7)]) which define obscene material and obscene performance to include "sexual excitement" as defined elsewhere in the statute (Ark.Stat.Ann. § 41–3501(12) [41–3502(12)]).

The remaining portions of the statute appear to pass constitutional muster under the challenge of facial invalidity which is here presented. The unenforceability of these portions of the statute does not appear to render the remaining statutory scheme inoperative, and this Court has no desire to interfere with the established legislative policy any more than necessary to protect constitutional liberties.

As indicated earlier, the appropriate remedy in this case is declaratory but not injunctive relief. An order making the preliminary injunction permanent as to those portions of the Act declared constitutionally infirm would invite the plaintiff to seek a contempt charge in the event it is prosecuted under the remainder of the Act. Such an action would require a determination by this Court as to what section of the Act the prosecutor is, in fact, proceeding under, and might require the Court to view the films in question. Under these circumstances the Court will exercise its discretion not to grant equitable relief because of the potential extreme difficulty in supervising such an injunction. Moreover, the declaratory relief herein provided should adequately protect the rights of the plaintiff. In the event of prosecution by the state under the Act, this opinion and judgment may be

raised in defense to the extent it is applicable. In such event, this decision would presumably be *res judicata*.[8]

It is, therefore, ordered that the preliminary injunction entered in this cause September 12, 1980, be dissolved effective October 23, 1980. Judgment in favor of the plaintiff will be entered in accordance with this opinion.

---

**8.** This issue is not entirely free from doubt. Compare the concurring opinion of White, J., with that of Rehnquist, J., (joined by Burger, C. J.) in *Steffel v. Thompson*, 415 U.S. 542, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).