**FERNWOOD BOOKS AND VIDEO, INC.,** a Mississippi corporation, Select Books and Video, Inc., a Mississippi corporation, and Golden Distributors, Inc., a Mississippi corporation, Plaintiffs,

v.

**CITY OF JACKSON, MISSISSIPPI,** a municipal corporation, Defendant.

Civ. A. No. J84–0775(L).

United States District Court, S.D. Mississippi, S.D.

Nov. 13, 1984.

stated that the Police Tenure Act 53 P.S. § 811 *et seq.* provided adequate procedural due process.

John H. Weston, G. Randall Garrow, Robert A. Sarno, Weston & Sarno, Beverly Hills, Cal., Bobby B. DeLaughter, Kirksey, Brantley & DeLaughter, Jackson, Miss., for plaintiffs.

John Hedglin, Jackson, Miss., for defendant.

1. See Appendix 1 for the text of the ordinance.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

The plaintiffs, Fernwood Books and Video, Inc., Select Books and Video, Inc. and Golden Distributors, Inc., filed this action to enjoin enforcement of an obscenity ordinance recently enacted by the defendant, the City of Jackson.[1] This court declined to enter a temporary restraining order pending resolution of the plaintiffs' Motion for a Preliminary Injunction. After review of the memoranda of authorities submitted by the parties and oral argument, the court is of the opinion that the plaintiffs' Motion for Preliminary Injunction is well taken and should be granted.

## PULLMAN ABSTENTION

The defendant contends that this court should refrain from deciding the constitutional issues in this case pursuant to the abstention doctrine set out in *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The *Pullman* Court stated that a federal court may properly defer to a state court "if a definitive ruling on the state issue would terminate the controversy." *Id.* at 498, 61 S.Ct. at 644. Abstention, however, is the exception rather than the rule. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967); *O'Hair v. White,* 675 F.2d 680, 692 (5th Cir.1982); *High Ol' Times, Inc. v. Busbee,* 621 F.2d 135, 139 (5th Cir.1980); *Gibson v. Jackson,* 578 F.2d 1045, 1048–49 (5th Cir.1978), *cert. denied,* 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979); *Goldstein v. Allain,* 568 F.Supp. 1377, 1383–84 (N.D. Miss.1983).

A federal court should exercise its jurisdiction unless resolution of the state law issue is "fairly susceptible of an interpretation that might avoid or substan-

tially modify the federal constitutional question." *O'Hair v. White*, 675 F.2d at 693. Abstention is not appropriate when state law is not ambiguous and is not necessary in every case involving a question that has not yet been interpreted by the state court. *Id.* In addition, abstention is rarely proper when fundamental constitutional rights, particularly First Amendment rights, are involved. *See Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1032–33 (5th Cir.1981); *Hobbs v. Thompson*, 448 F.2d 456, 463 (5th Cir.1971). After review of the issues raised by the plaintiff, this court concludes that abstention is not appropriate in this case.[2]

## CRITERIA FOR ISSUANCE OF A PRELIMINARY INJUNCTION

The requirements for the issuance of a preliminary injunction are well settled in the Fifth Circuit. The moving party must show:

(1) a substantial likelihood that the movant will prevail on the merits;

(2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; ·

(3) that the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmoving party; and

(4) that granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974).

## LIKELIHOOD OF SUCCESS ON THE MERITS

To prevail on their Motion for Preliminary Injunction, the plaintiffs must first demonstrate a substantial likelihood that they will succeed on the merits of their claims. The plaintiffs have raised two distinct claims and the court will discuss each separately.

### 1. Preemption by State Law

The plaintiffs argue that the City is without power to enact its obscenity ordinance because of the existence of a state statute regulating the same material.[3] The City's only response to this contention is that the statute has been held to be unconstitutional. This, of course, is not correct. In *Goldstein v. Allain*, the United States District Court for the Northern District of Mississippi merely enjoined enforcement of the statute against the plaintiffs pending a trial on the merits. In all other respects, the statute continues to be an enforceable law of this state.[4] Section 21–13–19, Miss. Code Ann., provides:

"All offenses under the penal laws of this state which are misdemeanors are hereby made, without further action of the municipal authorities, criminal offenses against the municipality in whose corporate limits the offenses may have been committed to the same effect as though such offenses were made offenses against the municipality by separate ordinance in each case."

Therefore, the portions of the state obscenity statute relating to misdemeanors are also enforceable laws of the City of Jackson, subject to the preliminary injunction entered in *Goldstein*.

The question of preemption presented by the plaintiffs has not been directly addressed by the Mississippi Supreme Court. Section 21–17–5 of the Mississippi Code Annotated grants the municipality the power to "enact ordinances for the purposes provided by law, where same are not repugnant to the laws of the state." Interpretation of this statute and its predecessors has made it clear that a municipality

---

**2.** As the court states later in this opinion, abstention may be an issue as to particular portions of the ordinance.

**3.** See Appendix 2 for the text of the state statute.

**4.** It should be noted that, since the *Goldstein* court issued its opinion and order, the Mississippi State Legislature has convened and took no action to repeal or amend the state obscenity statute.

"can only exercise such powers as are delegated by the legislature to municipalities and that such powers should be exercised in conformity to and consistent with the general laws of the state; that a municipality has no power except that delegated to it by the state; that powers of a municipality are to be construed most strongly against an asserted right not clearly given and cannot be extended by mere implication; [and] that if there is a conflict between a municipal ordinance and a state statute the latter must prevail." [5]

In *City of Jackson v. Lee*, 252 So.2d 897 (Miss.1971), the Mississippi Supreme Court upheld a Jackson ordinance requiring that operators and passengers of two-wheeled self-propelled vehicles wear helmets. The court found authority for the ordinance in the Mississippi statute delegating to municipalities the power to exercise jurisdiction in the matter of streets, sidewalks, sewers and parks.[6] Furthermore, § 8150, Miss. Code Ann. (1956) (recodified at § 63-3-209, Miss.Code Ann. (1972)), specifically provided that "Local authorities may, however, adopt additional traffic regulations which are not in conflict with the provisions of this Act." The court determined that the ordinance was not in conflict with the statute but rather was merely an additional traffic regulation as contemplated by the legislature.

Likewise, in *Watkins v. Navarrette*, 227 So.2d 853 (Miss.1969), the challenged ordinance was found to be authorized by state legislation. The ordinance made it unlawful to sell light wine and beer between the hours of 2:00 A.M. and 9:00 A.M. on week days and between 12:00 midnight Saturday and 9:00 A.M. Monday. The statute prohibited sale of beer and wine between 12:00 midnight and 7:00 A.M. or "during any time the licensed premises may be required to be closed by municipal ordinance or order of the Board of Supervisors." Section 10223, Miss.Code Ann. (1942) (recodified at § 67-3-53, Miss.Code Ann. (1972)). The State Tax Commission, pursuant to statutory authority, had approved the sale of alcoholic beverages in the city between the hours of midnight and 2:00 A.M. on weekdays.[7] The court acknowledged that, in the event of a conflict between an ordinance and a statute, the statute must prevail. The court held that no conflict existed but stated that an ordinance extending hours during which beer could be sold would be contrary to the controlling state law. In *City of Amory v. Yielding*, 203 Miss. 265, 34 So.2d 726 (1948), the Mississippi Supreme Court invalidated a local ordinance that had the effect of nullifying a state statute. The state statute provided that the possession of beer for personal consumption was legal. The local ordinance, which made that act illegal in the City of Amory, was held to be void because of the clear conflict with the statute. *Id.* 34 So.2d at 728.

In *Hattiesburg Firefighters Local 184 v. City of Hattiesburg*, 263 So.2d 767 (Miss. 1972), the court reviewed state statutes setting forth the powers and duties of a city council operating under a commission form of government and found authority for the enactment of an ordinance requiring that city employees reside within the city limits. Section 3374-53, Miss.Code Ann. (1942) (recodified at Section 21-5-9, Miss.Code Ann. (1972)), empowered the

---

5. *Hattiesburg Firefighters Local 184 v. City of Hattiesburg*, 263 So.2d 767 (Miss.1972). *See also Watkins v. Navarrette*, 227 So.2d 853, 855 (Miss. 1969); *City of Jackson v. Freeman-Howie, Inc.*, 239 Miss. 84, 121 So.2d 120, 120-21 (1960); *Alexander v. Edwards*, 220 Miss. 699, 71 So.2d 785, 786 (1954); *King v. City of Louisville*, 207 Miss. 612, 42 So.2d 813, 815 (1949); *Knight v. Johns*, 161 Miss. 519, 137 So. 509, 510 (1931); *Steitenroth v. City of Jackson*, 99 Miss. 354, 54 So. 955, 955 (1911); *City of Hazlehurst v. Mayes*, 96 Miss. 656, 51 So. 890, 890-91 (1910); *Critten-*

den v. Town of Booneville*, 92 Miss. 277, 45 So. 723, 724-25 (1908).

6. *See* § 3374-129, Miss.Code Ann. (1956) (recodified at § 21-37-3, Miss.Code Ann. (1972)).

7. Section 10265-17(a)(14), Miss.Code Ann. (1942) (recodified at § 67-1-37, Miss.Code Ann. (1984 Supp.)), empowered the State Tax Commission to "designate hours and days when alcoholic beverages may be sold in different localities in the State which permit sale."

council to enact "all needful rules and regulations for the government of the officers and employees of such city." Section 3374–54, Miss.Code Ann. (1942) (recodified at Section 21–5–11, Miss.Code Ann. (1972)), authorized the making of "all such rules and regulations as may be necessary or proper for the efficient and economical conduct of the business of the city."

The defendant has not identified any such authorization for the enactment of the ordinance under consideration. None of the above cases are directly on point regarding the issue before the court. The state statute does not specifically contemplate or anticipate additional regulation by a city as did the statutes in *Watkins, City of Jackson,* and *Hattiesburg Firefighters.* The Jackson ordinance, as a whole, does not have the effect of nullifying a state statute as the ordinance did in the *Amory* case.[8] A precise comparison of the statute and ordinance and the determination of their relative effects would be difficult because of the nature of the legislation. In *Hattiesburg Firefighters,* 263 So.2d at 769, the Mississippi Supreme Court stated that "powers of a municipality are to be construed most strongly against an asserted right not clearly given and cannot be extended by mere implication". Therefore, this court is of the opinion that, if presented with the issue, the Mississippi Supreme Court would find that the enactment of the ordinance was an unauthorized exercise of power by the City of Jackson and is therefore invalid. Accordingly, the plaintiffs have satisfied the first requirement of the *Canal Authority* test in showing a substantial likelihood of success on the merits of their preemption claim.

## 2. Substantive Challenges to the Ordinance

The plaintiffs have raised various substantive challenges to the ordinance, and the court will review each claim separately as an additional basis for its conclusion that the first requirement of the *Canal Authority* test has been met.[9]

The plaintiffs argue that officers of a corporation are made strictly liable if the corporation is found guilty of violating the ordinance. The ordinance, according to plaintiffs, eliminates the requirements of *actus reus* and *mens rea vis-a-vis* corporate officers. If the ordinance does in fact operate in that fashion, it penalizes mere "status", which the United States Supreme Court prohibited in *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The ordinance provides that "when a corporation is charged with violating this Ordinance, the corporation, the president, the vice-president, the secretary, and the treasurer may all be named as defendants." As named defendants, the corporate officers are charged with the violation. To obtain a conviction against any defendant, corporate officer or not, the City must prove the elements of the crime which are set out in Section 1 of the ordinance. Therefore, the ordinance does not eliminate the requirement of *actus reus,* but, rather, it necessitates the showing of a direct involvement in the commission of the offense by any defendant.

Section 6 of the ordinance states:

A required element of any conviction under this ordinance shall be that the defendant had actual or constructive knowledge of the nature of the material or conduct involved, and a person has constructive knowledge thereof if he has knowledge of facts which would put a

---

**8.** Certain provisions of the Jackson ordinance are in direct conflict with Mississippi statutes. For example, Section 21–23–7, Miss.Code Ann., gives municipal judges the authority to suspend any sentence, whereas the Jackson ordinance states that no sentence imposed thereunder shall be suspended. For a more detailed analysis of particular conflicts with state statutes, see *infra* notes 17–19 and accompanying text.

**9.** The plaintiffs also object to the ordinance on the ground that it imposes cruel and unusual punishment. The court is of the opinion that the punishment imposed is not disproportionate under the analysis set out in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) and that plaintiffs have not established a substantial likelihood of success on the merits of this claim.

reasonable and prudent person on notice as to the suspect nature of the material or conduct.

The plaintiffs contend that the requirement of scienter, or *mens rea*, in the ordinance does not satisfy constitutional standards. In *Hamling v. United States*, 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974), the United States Supreme Court stated that "it is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the material." In requiring only knowledge of the nature of the material, the ordinance omits *Hamling*'s requirement of knowledge of the contents and character of the subject matter. The court, therefore, concludes that, with respect to the scienter requirement, the ordinance is constitutionally infirm.[10]

In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the United States Supreme Court established a tripartite test for determining whether material is obscene. The Court stated:

> The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find the work, taken as a whole, appeals to the prurient interest ...; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. at 2615 (citations omitted).

The Court set forth two definitions of materials that could be regulated by a state:

> (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

> (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

*Id.*

That this list was not exhaustive was made clear in the Court's opinion in *Jenkins v. Georgia*, 418 U.S. 153, 160–61, 94 S.Ct. 2750, 2754–55, 41 L.Ed.2d 642 (1974). In *Jenkins*, the Court, after viewing the movie *Carnal Knowledge*, found it not to be obscene within the scope of *Miller*. The Court explained:

> Nothing in the movie falls within either of the two examples given in *Miller* of material which may constitutionally be found to meet the 'patently offensive' element of those standards, nor is there anything sufficiently similar to such material to justify similar treatment. While the subject matter of the picture is, in a broader sense, sex, and there are scenes in which sexual conduct including 'ultimate sexual acts' is to be understood to be taking place, the camera does not focus on the bodies of the actors at such times. There is no exhibition whatever of the actors' genitals, lewd or otherwise, during these scenes. There are occasional scenes of nudity, but nudity alone is not enough to make material legally obscene under the *Miller* standards.

*Id.* 418 U.S. at 161, 94 S.Ct. at 2755.

An accurate application of the *Miller* test is of the utmost importance because it separates that material which is entitled to the full protection of the First Amendment from that which can be regulated or even prohibited by a state. *See J.R. Distributors v. Eikenberry*, 725 F.2d 482, 489 (9th Cir.1984). Indeed, the *Miller* court announced that the intent of the test was to "provide fair notice to a dealer in such material." No one, the court stated, "will be subject to prosecution for the sale or exposure of obscene materials unless those

---

**10.** Section 97–29–101, Miss.Code Ann. (1984 Supp.), of the Mississippi obscenity statutes, requires that the defendant know the obscene nature of the material and have actual or constructive knowledge of the obscene contents of the subject matter. Because of this conflict in

the scienter requirements of the ordinance and statute, this court is of the opinion that this portion of the ordinance is preempted by the state legislation. See *supra* notes 4–8 and accompanying text for an analysis of the Mississippi law on preemption.

materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed." *Miller*, 413 U.S. at 27, 93 S.Ct. at 2616. Therefore, to be constitutional, the Jackson ordinance must include specific definitions of materials that are obscene within the *Miller* test. It is on this point that the plaintiffs contend that the Jackson ordinance has failed.

Section 2(b)(ii) defines as hard core sexual conduct the "lewd exhibition ... of ... female breast nipples." In *Miller*, the Court approved as a definition of hard core sexual conduct the "lewd exhibition of the genitals," but made no mention of "female breast nipples." This court finds that the ban of lewd exhibition of female breast nipples includes within its scope material that is constitutionally protected and, therefore, that this portion of the ordinance is overbroad.

Hard core sexual conduct is defined by Section 2(b)(iii) as sadomasochistic abuse. It is true, as the plaintiffs state in their brief, that the actions described in this subsection are not expressly limited to a sexual context. It is also clear, however, that the conduct described would necessarily take place within a sexual context. Although *Miller* limited permissible regulation to "works which depict or describe sexual conduct," 413 U.S. at 24, 93 S.Ct. at 2614, this court is of the opinion that Section 2(b)(iii) of the Jackson ordinance satisfies the *Miller* test and is not constitutionally overbroad. *See Red Bluff Drive-In,*

*Inc. v. Vance,* 648 F.2d 1020, 1026 (5th Cir.1981).

Section 2(b)(iv) describes as hard core sexual conduct:

Actual, simulated, or animated touching, or fondling of, or other similar physical contact with pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification.

Although a substantial portion of this section describes material that is subject to regulation, other portions clearly exceed the scope of *Miller* and reach material that is entitled to First Amendment protection. In *Wild Cinemas of Little Rock, Inc. v. Bentley,* 499 F.Supp. 655 (E.D.Ark.1980), the court held that a similar provision was overbroad.[11] The court stated that the section could be applied to "any romantic caress on screen or stage." *Id.* at 663. This, the court continued, was "exactly the case with *Carnal Knowledge* in *Jenkins v. Georgia." Id.* It is conceivable that the Jackson ordinance could reach just as far, and the court, therefore, finds this section of the ordinance to be unconstitutionally overbroad.[12]

The plaintiffs also assert that Section 2(b)(v) is overbroad, but the court concludes that this section is within the limits established by *Miller* and is not constitutionally impermissible. *See Red Bluff*

---

11. The court stated that the statute included in its definition of sexual conduct "any touching of the genitals, pubic areas, or buttocks of the human male or female, or the breast of the female, whether alone or between members of the same or opposite sex or between humans and animals in an act of apparent sexual stimulation or gratification." *Wild Cinemas,* 499 F.Supp. at 662.

12. In *State v. Amato,* 343 So.2d 698 (La.1977), a Louisiana court upheld the Louisiana statute on which the Jackson ordinance is based. The court concluded that the Louisiana counterpart of Section 2(b)(iv) did not exceed the limits of *Miller.* In support of its position, the City has referred the court to Louisiana state court cases dealing with the Louisiana obscenity statute af-

ter which the Jackson ordinance was fashioned. *See, e.g., State v. Windhorst,* 343 So.2d 711 (La. 1977); *State v. Amato,* 343 So.2d 698 (La.1977). The Louisiana courts have consistently upheld the statute against overbreadth challenges. This court notes that the Louisiana statute provides procedural safeguards that are not included in the ordinance. The Louisiana law requires an adversary hearing prior to the seizure of certain subject matter and conviction is possible only if the defendant continues to sell that material after a determination of obscenity. Recognizing that this issue is not before this court, the court notes that those safeguards may permit the statute to reach further into the "gray" area surrounding the *Miller* test than the ordinance, without those safeguards, will be able to do.

*Drive-In, Inc. v. Vance,* 648 F.2d 1020, 1027–28 (5th Cir.1981).

The plaintiffs contend further that the exemption of certain individuals and organizations found in section 3(1) of the ordinance denies them the equal protection of the laws. The exemptions distinguish between those who may and may not legally traffic in obscenity. Obscenity does not involve any fundamental right, *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 66, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446 (1973), so the exemption provision of the ordinance will be upheld if it is reasonably related to a legitimate state interest. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). This court is unable to identify any valid state interest which would justify the exemptions. By enacting the ordinance, the City of Jackson has declared an intent to eradicate dealings in obscenity within the city. This is a worthy goal, but it bears no rational relationship to the exemption of those cited in Section 3(1).[13]

The plaintiffs also object to Section 4(4) of the ordinance, which imposes more severe punishment when the offense is committed "with or in the presence of a minor." Although a state is given greater latitude in regulating the dissemination of sexually oriented material when minors are involved, this provision potentially "reaches a substantial amount of constitutionally protected conduct."[14] Attempts to comply with this section of the ordinance in an effort to avoid criminal prosecution would furthermore have a chilling effect on the exercise of First Amendment rights.[15] Therefore, the court is of the opinion that this provision of the ordinance is unconstitutionally vague.[16]

The plaintiffs further contend that specific portions of the ordinance are in conflict with Mississippi statutes and are, therefore, preempted.[17] As discussed earlier in this opinion, the scienter standards differ in the ordinance and statute to the extent that the ordinance is repugnant to the statutory provision.[18] Likewise, the ordinance's exemptions and definitions of the crime of obscenity are contradictory to those of the statute.[19] The sentences imposed by Section 4 of the ordinance are to be "without benefit of probation, parole, or suspension." Section 21–23–7, Miss.Code Ann. (1984 Supp.), empowers municipal judges to suspend any sentence, and this statutory section, therefore, preempts the imprisonment provision of the ordinance.

13. This court notes that the organizations listed in Section 3(1) are, in effect, already exempted by the substantive provisions of the ordinance. By definition, in Section 1 of the ordinance, obscene material is limited to that which "taken as a whole lacks serious literary, artistic, political, or scientific value." Any material legitimately used by any of the organizations listed in Section 3(1) would surely possess such value and would not be held to be obscene under the ordinance. See *Miller v. California,* 413 U.S. 15, 26, 93 S.Ct. 2607, 2616, 37 L.Ed.2d 419 (1973).

14. *Kolender v. Lawson,* 461 U.S. 352, 359 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903, 910 n. 8. The Court also stated: "Where a statute imposes criminal penalties, the standard of certainty is higher ... This concern has, at times, led us to invalidate a criminal statute on its face even when it could conceivably have had some valid application." *Id.* (citations omitted).

15. The plaintiffs also challenge section 2 of the ordinance which states, "lack of knowledge of age or marital status shall not constitute a defense." The court agrees that this section imposes strict liability and impermissibly chills the exercise of first amendment rights. See *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959).

16. The defendant contends that the court should abstain from deciding this issue pending interpretation by the state courts pursuant to *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Court rejected the argument that a finding of vagueness by the district court compels abstention. *Id.* at 401, 94 S.Ct. at 1805.

17. See *supra* notes 4–8 and accompanying text for analysis of the Mississippi law of preemption.

18. *See* Section 21–17–5, Miss.Code Ann. (1972). For discussion of the differing scienter standards in the ordinance and statute, *See supra* note 10 and accompanying text.

19. See Appendix 1 (text of City Ordinance); Appendix 2 (text of State Statute).

In addition, Sections 97–5–27 and –29 of the Mississippi Code Annotated regulate the dissemination of sexually oriented material to minors. To the extent that Section 4(4) of the ordinance, which imposes harsher punishment when the violation is committed "with or in the presence of a minor," conflicts with the statutory provision, it is also preempted.

This court concludes that the plaintiffs have shown a substantial likelihood of prevailing on several of their challenges to specific portions of the ordinance. The court must now determine whether these portions are severable. In *Day v. Klein,* 225 Miss. 191, 82 So.2d 831 (1955), the Mississippi Supreme Court stated:

> In accordance with general principles ordinarily applicable to municipal ordinances as well as to state statutes, where the provisions of an ordinance are separable, and it may fairly be presumed that the municipal council would have enacted one part without the other, the whole ordinance will not be declared void because of the invalidity, such as the unconstitutionality or unreasonableness of a part.

The Code of Ordinances of the City of Jackson includes a section which permits the severance of provisions found to be unconstitutional. Therefore, the court could eliminate those provisions found to be invalid and the remainder of the ordinance would continue to be enforceable. However, this court finds that the plaintiffs have demonstrated a substantial likelihood of success on the merits of so many of their claims, that, after severance, the remainder of the ordinance would not reflect the intent of the City Council. To sever the flawed portions of the ordinance would "essentially eviscerate the law and would create a program quite different from the one ... actually adopted." *Spokane Arcades, Inc. v. Brockett,* 631 F.2d 135, 139 (9th Cir.1980).

**20.** In its response brief, the defendant focuses solely on the substantive merits of the plaintiffs' claims and is silent as to the final three prongs of the *Canal Authority* test.

## IRREPARABLE INJURY

The plaintiffs have established that they have suffered and continue to experience economic harm that seriously threatens the existence of their businesses. Furthermore, in an effort to avoid prosecution under the ordinance, the plaintiffs have been forced to refrain from selling material that is arguably protected by the First Amendment. A showing of such interference with constitutional rights is sufficient to demonstrate the irreparable injury necessary for the issuance of a preliminary injunction.[20] *See Henry v. First National Bank,* 595 F.2d 291, 304–05 (5th Cir.1979); *Goldstein v. Allain,* 568 F.Supp. at 1386.

## ABSENCE OF HARM TO THE DEFENDANT

In *Goldstein v. Allain,* the court found that, since the Mississippi Legislature had made but one attempt to enact a revised obscenity statute in seven years,[21] the issuance of a preliminary injunction would cause the state to suffer little harm. That reasoning also applies to the instant case.

## PUBLIC INTEREST

The fourth prong of the *Canal Authority Test* requires that the moving party show that the public interest will be served by the issuance of a preliminary injunction. The court in *Goldstein v. Allain* analyzed this requirement as follows:

> Both the plaintiffs and the defendants agree that the public has a vital interest in the vigorous exercise of First Amendment Rights. This vital interest clearly outweighs any interest which the public may have in regulating the distribution of obscenity. As a result, this court cannot say that the public interest will be disserved by the issuance of such an injunction.

568 F.Supp. at 1386–87.

Likewise, this court concludes that the plaintiffs have satisfied this element of the *Canal Authority* test.

**21.** In *ABC Interstate Theaters, Inc. v. State,* 325 So.2d 123 (Miss.1976), the Mississippi Supreme Court struck down the obscenity statute then in effect.

■ This court is of the opinion that the plaintiffs have satisfied the four requirements of the *Canal Authority* test and are entitled to the issuance of a preliminary injunction pending a hearing on the merits of their claims.

An order will be entered according to the local rules of this court.

### APPENDIX 1

AN ORDINANCE TO DEFINE AND PROHIBIT OBSCENITY; AND TO ESTABLISH PENALTIES THEREFOR.

Section 1. The crime of obscenity is the intentional:

(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.

(2)(a) Participation or engagement in, or management, operation, production, presentation, performance, promotion, exhibition, advertisement, sponsorship, or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary, artistic, political, or scientific value.

(b) Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:

(i) Ultimate sexual acts, normal or perverted, actual, simulated, or animated, whether between human beings, animals, or an animal and a human being; or

(ii) Masturbation, excretory functions or lewd exhibition, actual, simulated, or animated, of the genitals, pubic hair, anus, vulva, or female breast nipples: or

(iii) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume that reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed: or

(iv) Actual, simulated, or animated touching, caressing, or fondling of, or other similar physical contact with pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or

(v) Actual, simulated, or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose.

(3) Sale, allocation, consignment, distribution, dissemination, advertisement, exhibition, or display of obscene material, or the preparation, manufacture, publication, or printing of obscene material for sale, allocation, consignment, distribution, advertisement, exhibition, or display.

Obscene material is any tangible work or thing which the trier of fact determines (a) that the average person applying contemporary community standards would find, taken as a whole, appeals to the prurient interest, and (b) depicts or describes in a patently offensive way, hard core sexual conduct specifically defined in Paragraph (2) above, and (c) the work or thing taken as a whole lacks serious literary, artistic, political, or scientific value.

(4) Requiring as a condition to a sale, allocation, consignment, or delivery for resale of any paper, magazine, book periodical, or publication to a purchaser or consignee that such purchaser or consignee also receive or accept any obscene material, as defined in Paragraph (3) above, for resale, distribution, display, advertisement, or exhibition purposes; or, denying or threatening to deny a franchise to, or imposing a penalty, on or against, a person by reason of his refusal to accept, or his return of, such obscene material.

(5) Solicitation or enticement of an unmarried person under the age of seventeen years to commit any act prohibited by Paragraphs (1), (2), or (3) above.

Section 2. Lack of Knowledge of age or marital status shall not constitute a defense.

Section 3. (1) The provisions of this Ordinance do not apply to recognized and established schools, churches, museums, medical clinics, hospitals, physicians, public libraries, governmental agencies, quasi-governmental sponsored organizations and persons acting in their capacity as employees or agents of such organizations, or a person solely employed to operate a movie projector in a duly licensed theatre.

(2) For the purpose of this Paragraph, the following words and terms shall have the respective meanings defined as follows:

(a) "Recognized and established schools" means schools having a full time faculty and pupils, gathered together for instruction in a diversified curriculum.

(b) "Churches" means any church, affiliated with a national or regional denomination.

(c) "Physicians" means any licensed physician or psychiatrist.

(d) "Medical clinics and hospitals" means any clinic or hospital of licensed physicians or psychiatrists used for the reception and care of the sick, wounded or infirm.

Section 4. (1) On a first conviction, whoever commits the crime of obscenity shall be fined not less than three hundred dollars nor more than five hundred dollars, or imprisoned, for not less than thirty days or both.

(2)(a) On a second conviction, the offender shall be imprisoned for not less than sixty days without benefit of probation, parole, or suspension of sentence, and in addition may be fined not less than five hundred dollars.

(b) The imprisonment provided for in Subparagraph (a), may be imposed at court discretion if the court determines that the offender, due to his employment, could not avoid engagement in the offense. This Subparagraph (b) shall not apply to the manager or other person in charge of an establishment selling or exhibiting obscene material.

(3) On a third or subsequent conviction, the offender shall be imprisoned for not less than ninety days, without benefit of probation, parole, or suspension of sentence, and in addition may be fined not less than one thousand dollars.

(4) When a violation of Paragraph (1), (2) or (3) of Section 1 of this Ordinance is with or in the presence of an unmarried person under the age of seventeen years, the offender shall be fined not less than one thousand dollars and shall be imprisoned for not less than ninety days without benefit of parole, probation, or suspension of sentence.

Section 5. (1) When a corporation is charged with violating this Ordinance, the corporation, the president, the vice president, the secretary, and the treasurer may all be named as defendants. Upon conviction for a violation of this Ordinance a corporation shall be sentenced in accordance with Section 4 hereof. All corporate officers who are named as defendants shall be subject to the penalty provisions of this Ordinance as set forth in Section 4.

(2) Proceedings brought against a corporation by affidavit shall proceed in the same manner as proceedings brought against a corporation by indictment or information under state law.

Section 6. A required element of any conviction under this ordinance shall be that the defendant had actual or constructive knowledge of the nature of the material or conduct involved, and a person has constructive knowledge thereof if he has knowledge of facts which would put a reasonable and prudent person on notice as to the suspect nature of the material or conduct.

Section 7. This ordinance shall be in force and effect thirty (30) days from and after passage.

## APPENDIX 2

## OBSCENE MATERIALS, PERFORMANCES AND DEVICES

§ 97–29–101. **Distribution or wholesale distribution of obscene materials or performances; character and reputation as evidence; prosecutor's bond.**

A person commits the offense of distributing obscene materials or obscene performances when he sells, rents, leases, advertises, publishes or exhibits to any person any obscene material or obscene performance of any description knowing the obscene nature thereof, or offers to do so, or possesses such material with the intent to do so. A person commits the offense of wholesale distributing obscene materials or obscene performances when he distributes for the purpose of resale any obscene material or obscene performance of any description knowing the obscene nature thereof, or offers to do so, or possesses such material with the intent to do so. The word "knowing" as used in this section means either actual or constructive knowledge of the obscene contents of the subject matter, and a person has constructive knowledge of the obscene contents if he has knowledge of facts which would put a reasonable and prudent person on notice as to the suspect nature of the material. The character and reputation of an individual charged with an offense under section 97–29–101 through 97–29–109 and, if a commercial dissemination of obscene material or an obscene performance is involved, the character and reputation of the business establishment involved, may be placed in evidence by the defendant on the question of intent to violate sections 97–29–101 through 97–29–109.

Any person, other than a city attorney, county prosecuting attorney or district attorney, who shall sign an affidavit charging an offense prescribed by this section shall file a bond in the amount of five hundred dollars ($500.00) at the time such affidavit is lodged. Such bond shall be conditioned that the affidavit was not filed frivolously, maliciously or out of ill will.

§ 97–29–103. **Definitions.**

(1) Material or performance is obscene if:

(a) To the average person, applying contemporary community standards, taken as a whole, it appeals to the prurient interest, that is, a lustful, erotic, shameful, or morbid interest in nudity, sex or excretion; and

(b) The material taken as a whole lacks serious literary, artistic, political or scientific value; and

(c) The material depicts or describes in a patently offensive way, sexual conduct specifically defined in subparagraphs (i) through (v) below:

(i) Acts of sexual intercourse, heterosexual or homosexual, normal or perverted, actual or simulated;

(ii) Acts of masturbation;

(iii) Acts involving excretory functions or lewd exhibition of the genitals;

(iv) Acts of bestiality or the fondling of sex organs of animals; or

(v) Sexual acts of flagellation, torture or other violence indicating a sadomasochistic sexual relationship.

(2) Undeveloped photographs, molds, printing plates and the like shall be deemed obscene material, notwithstanding that processing or other acts may be required to make the obscenity patent or to distribute it.

(3) "Performance" means a play, motion picture, dance or other exhibition performed before an audience.

(4) "Patently offensive" means so offensive on its face as to affront current community standards of decency.

(5) "Wholesale distributes" means to distribute for the purpose of resale.

(6) "Material" means any book, magazine, newspaper, advertisement, pamphlet, poster, print, picture, figure, image, drawing, description, motion picture film, phonographic record, recording tape, video tape, or other tangible thing producing, reproducing or capable of producing or repro-

ducing an image, picture, sound or sensation through sight, sound or touch, but it does not include an actual three-dimensional sexual device as defined in section 97–29–105.

§ **97–29–105. Distribution or wholesale distribution of unlawful sexual devices; prosecutor's bond.**

A person commits the offense of distributing unlawful sexual devices when he knowingly sells, advertises, publishes or exhibits to any person any three-dimensional device designed or marketed as useful primarily for the stimulation of human genital organs, or offers to do so, or possesses such devices with the intent to do so. A person commits the offense of wholesale distributing unlawful sexual devices when he distributes for the purpose of resale any three-dimensional device designed or marketed as useful primarily for the stimulation of human genital organs, or offers to do so, or possesses such devices with the intent to do so.

Any person, other than a city attorney, county prosecuting attorney or district attorney, who shall sign an affidavit charging an offense prescribed by this section shall file a bond in the amount of five hundred dollars ($500.00) at the time such affidavit is lodged. Such bond shall be conditioned that the affidavit was not filed frivolously, maliciously or out of ill will.

§ **97–29–107. Exemptions from application of §§ 97–29–101 through 97–29–109; procedure for claiming exemption; defenses.**

(1) Sections 97–29–101 through 97–29–109 shall not apply when the distribution or wholesale distribution of the material, performance or device was made by:

(a) A person, corporation, company, partnership, firm, association, business, establishment or other legal entity to a person associated with an institution of higher learning, either as a member of the faculty or as a matriculated student, teaching or pursuing a course of study related to such material, performance or device.

(b) A licensed physician or a licensed psychologist to a person whose receipt of such material or device was authorized in writing by such physician or psychologist in the course of medical or psychological treatment or case;

(c) A person who while acting in his capacity as an employee is employed on a full-time or part-time basis by (i) any recognized historical society or museum accorded charitable status by the federal government; (ii) any state, county or municipal public library; or (iii) any library or any public or private school, college or university in this state; or

(d) A community television antenna services system or a cable television system operating pursuant to a written agreement not in conflict with this paragraph granted by a county, municipality or other political subdivision of this state, or by an employee of such system while acting within the scope of his employment, when the signal transmitting the material or performance originates outside of the state of Mississippi.

(2) Any exemption from prosecution claimed under the provisions of this section may be raised at a pretrial hearing by motion, and the court shall determine whether sufficient evidence exists to constitute an exemption from prosecution under the provisions of sections 97–29–101 through 97–29–109. If the motion is sustained, the case shall be dismissed; provided, however, if the motion is not sustained then the defendant may offer into evidence at trial as an affirmative defense to conviction under this act any matter which could have been raised by the defendant in the motion to dismiss.

§ **97–29–109. Penalties.**

Any person, except one who wholesale distributes, who violates section 97–29–101 or section 97–29–105 shall be guilty of a misdemeanor and, upon conviction, shall, in the case of the first offense, be fined not more than five thousand dollars ($5,000.00) or imprisoned in the county jail for a term

not to exceed six (6) months, or both. If the person has been previously convicted of a violation of section 97–29–101 or section 97–29–105 or of section 97–5–27 or 97–5–29, Mississippi Code of 1972, then the person shall be fined not less than two thousand five hundred dollars ($2,500.00) nor more than ten thousand dollars ($10,000.00) or imprisoned for a term not to exceed one (1) year, or both.

Any person who wholesale distributes in violation of section 97–29–101 or section 97–29–105 shall, upon conviction, be fined not more than ten thousand dollars ($10,-000.00) or imprisoned for a term not to exceed one (1) year, or both. If the person has been previously convicted of a violation of section 97–29–101 or section 97–29–105 or of section 97–5–27 or 97–5–29, Mississippi Code of 1972, then the person shall, upon conviction, be fined not less than two thousand five hundred dollars ($2,500.00) nor more than fifty thousand dollars ($50,-000.00) or imprisoned for a term not to exceed one (1) year, or both.

A corporation, company, partnership, firm, association, business, establishment, organization or other legal entity other than an individual convicted of distributing obscenity or unlawful sexual devices or wholesale distribution of obscenity or unlawful sexual devices shall be fined not less than one thousand dollars ($1,000.00) nor more than ten thousand dollars ($10,-000.00). If such legal entity has been previously convicted of distributing obscenity or unlawful sexual devices or wholesale distribution of obscenity or unlawful sexual devices or of a violation of section 97–5–27 or section 97–5–29, Mississippi Code of 1972, then such legal entity shall be fined not less than five thousand dollars ($5,000.00) nor more than fifty thousand dollars ($50,000.00).